**Richard Earl PILON,**
**Petitioner-Appellant,**

v.

**Donald E. BORDENKIRCHER, Warden,**
**Respondent-Appellee.**

**No. 78–3314.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 29, 1978.

Decided Feb. 26, 1979.

Terrence R. Fitzgerald, Deputy Public Defender, Louisville, Ky. [Court-appointed CJA], for petitioner-appellant.

Robert F. Stephens, Atty. Gen. of Kentucky, Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, Ky., for respondent-appellee.

Before CELEBREZZE and KEITH, Circuit Judges, and GREEN,[*] Senior District Judge.

CELEBREZZE, Circuit Judge.

▮ Petitioner-appellant, Richard Earl Pilon, was convicted in a Kentucky Circuit Court jury trial of manslaughter in the first degree. His conviction was affirmed on direct appeal by the Supreme Court of Kentucky. *Pilon v. Commonwealth,* 544 S.W.2d 228 (Ky.1976). He appeals from the district court's denial of his petition for a writ of habeas corpus. The principal contention on appeal is that the refusal of the state trial court to give a lesser included offense jury instruction constituted a denial of due process.[1] We affirm.

We adopt the recitation of facts given by the Supreme Court of Kentucky:

Marvin Cole Marcum, the seventeen-month-old son of Nola Marcum (Pilon), died at Norton-Children's Hospital at 6:50 p. m. on May 8, 1975. He had been brutally and severely beaten. Dr. Stuart Wolfson, a pathologist, stated that Marvin's death was caused by a loss of blood due to a laceration of the spleen. The doctor testified that a person sustaining an injury of this type could not live for more than seven or eight hours after the time of injury. The doctor observed multiple bruises over the body of Marvin.

A composite of the evidence of Richard Earl Pilon and Nola Marcum (Pilon) is as follows: Richard, Nola, Marvin, and his three-year-old sister, Stacy, lived together in a mobile home in Jefferson County. On May 7, 1975, at about 10 a. m., Pilon,

---

[*] The Honorable Ben C. Green, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

1. The only other issue raised by Pilon on appeal is whether the evidence adduced at trial was sufficient to support the verdict. He acknowledges that our standard of review in habeas corpus cases is limited to determining whether the conviction was totally devoid of evidentiary support. *Blockson v. Jago,* 587 F.2d 10, 11 (6th Cir. 1978); *Salter v. Johnson,* 579 F.2d 1007, 1009 (6th Cir. 1978); *Brooks v. Rose,* 520 F.2d 775, 777 (6th Cir. 1975), citing cases. Suffice it to say that the conviction in this case is not totally devoid of evidentiary support inasmuch as the evidence demonstrated that Pilon had complete control over the victim during the time in which the medical evidence established the fatal injuries must have occurred. *See* recitation of facts, *infra* in text.

Nola, and the children went fishing after which they all went to a drive-in movie. The children went to sleep in the back of the car during ti.e movie, around 10 p. m. The entire party returned to the trailer at 4 a. m. on May 8 and immediately went to bed. Pilon and Nola got up around noon. The children were already up and playing in their room. Pilon made breakfast while Nola fixed her uniform so she could go to work. They were all together until Pilon, accompanied by Marvin and Stacy, took Nola to work at 2:30 p. m. From there Pilon, accompanied by the children, went to the office of Dr. Kincaid who had performed surgery on Pilon's hand. They were at the doctor's office from around 3:45 p. m. to 5 p. m.

Marvin had been slightly ill most of the day with flu or a cold, but his ailment appeared to become more pronounced with the passage of time. Dr. Kincaid observed that the child was acutely ill and recommended that Pilon take him to a hospital. Pilon proceeded from the doctor's office to the house of a friend, Richard Childers, and asked him to look at the child. Childers testified that the child was as "pale as a ghost." Pilon and the children then returned to the trailer, and Marvin was put to bed. By 6 p. m. Marvin's condition had become critical. Pilon called Nola who met him at 6:30 p. m., and they proceeded to the hospital only to discover that Marvin had died before they could get medical assistance.

Pilon and Nola, in their testimony, attempted to explain the presence of the bruises on Marvin's body by showing that the child was overly clumsy for his age and prone to falling down and bruising easily. The witness Childers who had seen the child at approximately 5 p. m. on the day of his death testified that he observed no bruises on the body other than those on the head. Nola testified

that on the way to the hospital she had raised the top of Marvin's pajamas and placed her hand on his stomach and that at the time she observed no bruises on his stomach or chest. Pilon, fortuitously, observed this same condition by looking through the rear-view mirror as he rushed toward the hospital.

Nola testified that she had not struck Marvin or at any time abused him. She was with him until approximately 2:30 p. m. of that day. Pilon testified that he had never touched the child. His evidence discloses, however, one conclusive fact: he was with the child either with the mother or alone during the entire day of May 8, 1975.

544 S.W.2d at 229–30.

■ Pilon argues that the state trial court's refusal to give a requested lesser included offense instruction constituted a denial of due process. Pilon was found guilty of the offense charged in the indictment, viz., manslaughter in the first degree. K.R.S. § 507.030.[2] He requested that the jury be instructed that it could convict him of the lesser included offense of reckless homicide. K.R.S. § 507.050.[3] The trial court's refusal to so instruct was upheld by the Supreme Court of Kentucky. It reasoned that there was "no evidence in this record which would justify the giving of a reckless-homicide instruction." 544 S.W.2d at 231. We agree.

Reckless homicide occurs under Kentucky law "when, with recklessness [a person] causes the death of another person." K.R.S. § 507.050(1). "Recklessly," in turn, is defined as follows:

A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or

---

2. K.R.S. § 507.030:
   (1) A person is guilty of manslaughter in the first degree when:
   (a) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or * *.

3. K.R.S. § 507.050:
   (1) A person is guilty of reckless homicide when, with reck!essness he causes the death of another person.
   (2) * * *

that the circumstance exists. The risk must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

K.R.S. § 501.020(4).

Under the state's theory of the case, Pilon did not act "recklessly," as defined above. Rather, the state contended, and its evidence supported this contention, that Pilon inflicted a severe beating upon the victim and committed manslaughter in the first degree since, "with intent to cause serious physical injury to [the victim], he cause[d] the death of such person . . ." K.R.S. § 507.030(1)(a). Thus, the jury only needed to decide if Pilon committed such an act. Reckless homicide was not an alternative under this view of the evidence since Pilon was alleged to have *intentionally* caused the injuries leading to the death, as opposed to *failing to perceive* a substantial risk of death.

▮ The evidence could have supported only one other theory which could have led the jury to believe Pilon was criminally responsible for the victim's death yet not guilty of manslaughter in the first degree.

The jury might have found that Pilon did not beat the victim but acted culpably in not taking the victim to the hospital after Dr. Kincaid recommended that Pilon do so. This would not have constituted reckless homicide, however, since the advice of Dr. Kincaid would have made Pilon *aware* of the risk to the victim if not taken to the hospital. Reckless homicide is defined to occur when one "*fails to perceive* a substantial and unjustifiable risk" of death. K.R.S. §§ 507.050(1); 501.020(4) (emphasis added). Thus, the only alternative theory of guilt besides the offense charged which the evidence would support was not consistent with reckless homicide and the trial court did not err in refusing to give a reckless homicide instruction. So even if we assume that the failure to give a requested lesser included offense instruction could ever be cognizable in a habeas corpus proceeding, such failure clearly does not rise to the level of constitutional error when the failure was correct as a matter of state law.[4] *See Weston v. Rose,* 527 F.2d 524 (6th Cir. 1975) (no federal constitutional error cognizable on habeas in giving jury instruction later declared erroneous by state supreme court).[5]

4. Inasmuch as the highest court of Kentucky expressly held that the state trial court did not err in refusing to give the requested lesser included offense instruction, the refusal was necessarily correct as a matter of state law. It would be an extremely rare case in which a federal court could conclude that a state court committed an error under state law. Indeed, if the case has been reviewed by the state's highest court it would be impossible to find an error of state law if that court did not. (It would be conceivable to find an error of state law if a state trial court ignored clearly controlling precedent—but we need not decide the question.) It would thus be equally rare for a federal court to be able to grant habeas corpus relief because of an "erroneous" refusal to give a lesser included offense jury instruction. The issue would instead be whether state law on the matter violated due process.

The Supreme Court said in *Keeble v. United States,* 412 U.S. 205, 213, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), that it had never decided whether the due process clause of the fifth amendment guaranteed a federal defendant the right to have the jury instructed on a lesser included offense. But under the federal rule on the question, based on an interpretation of Fed-

eral Rule of Criminal Procedure 31(c) and a prior statute, the Supreme Court has always held that there must be evidence which would permit the jury to rationally find the defendant guilty of the lesser included offense and acquit him on the greater offense before he is entitled to a lesser included offense instruction. *Keeble, supra,* 412 U.S. at 208, 93 S.Ct. 1993; *Sansone v. United States,* 380 U.S. 343, 349–50, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *Berra v. United States,* 351 U.S. 131, 134, 76 S.Ct. 685, 100 L.Ed. 1013 (1956); *Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896).

While the federal rule is not necessarily constitutionally mandated, clearly it does not violate the Constitution. Therefore, when, as in the instant case, there is no evidentiary support for the lesser included offense instruction, there can be no violation of due process from the refusal to give it.

5. In *United States ex rel. Matthews v. Johnson,* 503 F.2d 339 (3d Cir. 1974), *cert. den.* 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975), the third circuit sitting en banc held that the due process clause of the fourteenth amendment required the giving of a requested lesser includ-

While the alternative theory of guilt outlined above would not support a reckless homicide charge, it may well have supported an instruction on manslaughter in the second degree. That crime is defined in Kentucky to occur when one "wantonly causes the death of another person." K.R.S. § 507.040(1).[6] "Wantonly," in turn, is defined as follows:

A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.

K.R.S. § 501.020(3).

If the jury believed that Pilon caused the death of the victim not by beating him but by failing to take him to the hospital when so advised by Dr. Kincaid, that could constitute manslaughter in the second degree since Pilon would have been "aware of and consciously disregard[ed] a substantial and unjustifiable risk" of death. K.R.S. §§ 507.040(1); 501.020(3).

ed offense instruction (voluntary manslaughter in state murder prosecution). The case turned, however, on peculiar Pennsylvania law which allowed a jury to return a voluntary manslaughter verdict in a murder prosecution even in the total absence of any evidence of heat of passion or the like. The decision on whether or not to give a voluntary manslaughter instruction was in the absolute discretion of the trial judge. The third circuit held that it was this essentially unreviewable, standardless discretion on the part of the trial judge which constituted the due process violation. The defendant was arbitrarily denied the opportunity for a reduced sentence.

*Matthews* is clearly distinguishable from the instant case since Kentucky law requires an evidentiary basis for the giving of a lesser included offense instruction. The decision of the trial judge is made according to an established standard and is subject to appellate review.

6. K.R.S. § 507.040:

■ Pilon did not request an instruction on the lesser included offense of manslaughter in the second degree, however. As a general rule, the failure to give an unrequested lesser included offense instruction is not cognizable on habeas corpus. *Quinn v. United States,* 499 F.2d 794, 795–96 (8th Cir. 1974) (a 28 U.S.C. § 2255 "federal habeas corpus" case); *Higgins v. Wainwright,* 424 F.2d 177, 178 (5th Cir.), cert. den. 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142 (1970); *Poulson v. Turner,* 359 F.2d 588, 591 (10th Cir.), cert. den. 385 U.S. 905, 87 S.Ct. 219, 17 L.Ed.2d 136 (1966). Cf. *United States ex rel. Johnson v. Vincent,* 370 F.Supp. 379, 382–84 (S.D.N.Y.), *rev'd on other grounds,* 507 F.2d 1309 (2d Cir. 1974), cert. den. 420 U.S. 994, 95 S.Ct. 1435, 43 L.Ed.2d 678 (1975); *Shaffer v. Field,* 339 F.Supp. 997, 1004 (C.D.Cal.1972), *aff'd* 484 F.2d 1196, 1198 (9th Cir. 1973). See *Manning v. Rose,* 507 F.2d 889, 895 (6th Cir. 1974) (failure to give unrequested alibi instruction not cognizable on habeas). See generally *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) (state court jury instruction not cognizable on habeas, even if "undesirable, erroneous, or even 'universally condemned,'" unless "it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.")[7]

(1) A person is guilty of manslaughter in the second degree when he wantonly causes the death of another person.
(2) * * *

7. See also *Henderson v. Kibbe,* 431 U.S. 145, 154–55, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) ("It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court. The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. * * * [The] burden is especially heavy [when] no erroneous instruction was given [and the] claim of prejudice is based on the failure to [instruct. . . .] An omission, or incomplete instruction, is less likely to be prejudicial than a misstatement of the law.")

The judgment of the district court is affirmed.