**Joe Eddie HUDSON, Petitioner,**

v.

**Dewey SOWDERS, Warden, et al., Respondents.**

**No. C 80–0602–L(B).**

United States District Court,
W. D. Kentucky,
Louisville Division.

March 12, 1981.

Thomas E. Clay, Louisville, Ky., for petitioner.

Steven L. Beshear, Atty. Gen., Frankfort, Ky., for respondents.

## MEMORANDUM

BALLANTINE, District Judge.

Petitioner was indicted in May of 1975 for the murder and armed robbery of a Brink's guard. The incident occurred on February 10, 1975, at the Southland Mall J. C. Penny's in Louisville, Kentucky. Petitioner's trial began on May 16, 1978, and lasted three days. The Commonwealth's case primarily consisted of eyewitness testimony by Nellie Parker, a J. C. Penny's sales clerk, testimony of Harold Crump, an accomplice, and testimonial and physical evidence tending to corroborate Crump's testimony. Petitioner did not present a defense. The jury returned a verdict of guilty on both counts, recommending death on the murder count and twenty years on the armed robbery count. On appeal, the Supreme Court of Kentucky affirmed on the issue of guilt but reversed the death penalty, remanding for imposition of a life sentence on the murder count. After review of fourteen assignments of error unrelated to the death penalty issue, the state court held them to be without merit or harmless beyond a reasonable doubt.

Petitioner instituted this action seeking habeas corpus relief, and the matter is before the Court on the motion of respondent to dismiss. The Court will discuss each of petitioner's five claims separately.

### I.

■ Petitioner first alleges that the failure of the Commonwealth to disclose exculpatory evidence prior to trial deprived him of a fair trial, citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Petitioner has divided the allegedly exculpatory evidence into three categories:

1) The failure of Nellie Parker to identify petitioner from pretrial photo displays and her selection of photographs of other individuals as "look-alikes."

2) The failure of Mr. and Mrs. Benjamin Levinson to identify petitioner from a pretrial photo display as a tenant of an apartment owned by them at 1722 Esquire.

3) Pretrial identification of individuals other than petitioner.

The standards by which the Commonwealth's conduct is to be measured were set out by the Supreme Court of the United States in *Moore v. Illinois*, 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2567–68, 33 L.Ed.2d 706 (1972):

"The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence."

It becomes apparent in light of these standards that petitioner's claim is meritless.

First, the Court has serious doubts as to whether the evidence complained of was suppressed. Ms. Parker's participation in pretrial identification procedures was disclosed to defense counsel at a suppression hearing prior to trial and Ms. Parker underwent extensive cross-examination on the subject during trial. The Levinson's inability to identify petitioner on April 5, 1976, was disclosed to defense counsel at a suppression hearing prior to their testimony and the jury was recalled to hear a stipulation to that effect. The misidentification evidence was made available to defense counsel during trial and three detectives were thoroughly cross-examined as to each misidentification. In *United States v. Clark*, 538 F.2d 1236, 1237 (6th Cir. 1976), the Sixth Circuit held:

"We do not believe that this case approaches the abuse of due process found in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). * * Assuming however, that there had been suppression of an important item of evidence from appellant's counsel, such suppression plainly did not continue throughout the trial. Full disclosure was made on the third day of the trial, not only to appellant's counsel, but subsequently before the jury which convicted appellant."

*Clark* is particularly applicable to the case at bar. *Brady* dealt with suppression of evidence until after trial. Here, the problem is the timing of disclosure, not total suppression. Inasmuch as full disclosure was made before the trial ended and the evidence was exhaustively developed on cross-examination, no error occurred. *See*

*United States v. McPartlin*, 595 F.2d 1321 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979); *United States v. Pollack*, 534 F.2d 964 (D.C.Cir.), *cert. denied*, 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976).

Further, it is questionable whether the evidence complained of was favorable to the defense. There is authority for the position that nonidentification of a defendant or identification of a non-defendant is not exculpatory. *United States v. Rhodes*, 569 F.2d 384 (5th Cir.), *cert. denied*, 439 U.S. 844, 99 S.Ct. 138, 58 L.Ed.2d 143 (1978); *United States v. Palmer*, 536 F.2d 1278 (9th Cir. 1976); *Sweatt v. Commonwealth*, 550 S.W.2d 520 (Ky.1977). However, another line of cases holds that such evidence is exculpatory. *Grant v. Alldredge*, 498 F.2d 376 (2d Cir. 1974); *Evans v. Janing*, 489 F.2d 470 (8th Cir. 1973). The Court need not resolve the issue, however, because the Court is of the opinion that the evidence, even if favorable to the defense, was not material. Exculpatory evidence is material under *Brady* if it "creates a reasonable doubt that did not otherwise exist." *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976). In the case at bar, all of the evidence complained of was presented in detail to the jury, which found petitioner guilty beyond a reasonable doubt. The failure to provide such evidence prior to trial did not infringe petitioner's right to a fair trial.

## II.

Petitioner's second claim is aimed at the pretrial identification procedures. He argues that he was denied due process of law because the pretrial identification by Ms. Parker and the Levinsons was impermissibly suggestive and because the Commonwealth failed to produce photo displays shown to Ms. Parker and the Levinsons.

"[T]he standard by which we must test a claim that an in-court identification has been so tainted by a previous photographic identification as to require exclusion," *United States v. Ayendes*, 541 F.2d 601, 604 (6th Cir. 1976), *cert. denied*, 429 U.S. 1063, 97

S.Ct. 789, 50 L.Ed.2d 779 (1977), was defined by the United States Supreme Court in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The Court held in *Simmons* that:

"[E]ach case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384, 88 S.Ct. at 971.

■ In the case at bar, Ms. Parker testified that she spoke to and observed the participants in the robbery and shooting and that her identification was based solely on her recollection of the incident. She did not waiver from her positive in-court identification despite extensive cross-examination on the matter. The Court is persuaded that here, as in *Ayendes*, there was no substantial likelihood of irreparable misidentification.

■ Nor is the Court of the opinion that the failure accurately to reconstruct all photo displays shown to Ms. Parker amounted to a denial of due process. In fact, it is not clear from the record that the Commonwealth failed to produce all photo displays shown to Ms. Parker. In any event, petitioner waived any error by choosing not to accept the trial court's offer to suppress evidence relating to photographs viewed by Ms. Parker.

■ Petitioner's attack on the identification procedures with respect to the Levinsons must likewise fail. The Levinsons identified petitioner as a tenant in their apartment, not as a participant in the crime. The testimony of the Levinsons had no bearing on petitioner's guilt other than to corroborate a minor detail of Crump's accomplice testimony. *Simmons* is simply not applicable in a situation such as this.

The Commonwealth conceded that it failed to preserve the photo displays shown to the Levinsons. Petitioner's discovery motion, however, sought photographs in which any person was identified as a participant in the crime or in which petitioner was not identified as a participant. Since the Levinsons did not identify petitioner as a participant, there was no error of constitutional magnitude in the failure of the Commonwealth to produce such photographs.

### III.

Petitioner's third claim is based upon the trial court's failure to give the instructions tendered on the presumption of innocence and reasonable doubt.

■ The failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution. *Kentucky v. Whorton*, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979). Instead, "such a failure must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial." 441 U.S. at 789, 99 S.Ct. at 2089.

■ In the case at bar, Ms. Parker, an eyewitness, positively identified petitioner as the person who shot the Brink's guard in the course of the robbery. Harold Crump testified that he drove the getaway car and that petitioner was missing a tennis shoe when he got into the car after the robbery. According to Crump, they returned to petitioner's apartment at 1722 Esquire, where petitioner stated that he had to kill the guard. Crump further testified that he disposed of the gun used by petitioner, a .22 caliber revolver which had one spent cartridge in the chamber. Crump's testimony was corroborated by physical evidence found at the scene, including a tennis shoe and a .22 caliber slug, and the Levinsons' identification of petitioner as a tenant at 1722 Esquire. This overwhelming evidence of guilt, coupled with the absence of improper conduct on the part of the Common-

wealth, convinces the Court that the failure to instruct on the presumption of innocence did not deprive petitioner of a fair trial.

■ The trial court also refused to give the instruction tendered by the defense on reasonable doubt. However, the trial court did give a reasonable doubt instruction. Habeas corpus is not available to set aside a conviction on the basis of erroneous jury instructions. *Pilon v. Bordenkircher*, 593 F.2d 264 (6th Cir.), *vacated on other grounds*, 444 U.S. 1, 100 S.Ct. 7, 62 L.Ed.2d 1 (1979). The Court recognizes that the reasonable doubt instruction given is the same as that criticized in *Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). *Taylor*, however, did not hold the instruction per se unconstitutional, nor is this Court willing to do so.

### IV.

■ Fourth, petitioner contends that the Commonwealth failed to provide a speedy trial. Petitioner was indicted on May 5, 1975 and escaped from custody three weeks later. He was apprehended on December 12, 1976, three months after the date which had been set for trial. Petitioner first moved for a speedy trial on June 6, 1977, and trial was set for June 27. Petitioner escaped again the day before trial, and was not apprehended until December 9, 1977. Petitioner's trial commenced on May 16, 1978. It is obvious that petitioner alone was responsible for the delay between indictment and trial. Petitioner was not deprived of his right to a speedy trial. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

### V.

■ Petitioner's final claim is that the trial court erred in admitting the autopsy report of a doctor through a records custodian. The substance of this argument is merely an attempt to raise a question of state evidentiary law to a federal constitutional level. Petitioner concedes that the autopsy report was properly admitted under Kentucky law. *Buckler v. Commonwealth*, 541 S.W.2d 935 (Ky.1976). The discretion of

the trial court in admitting such evidence is not reviewable in a habeas corpus proceeding. *Oliphant v. Koehler*, 594 F.2d 547 (6th Cir.), *cert. denied*, 444 U.S. 877, 100 S.Ct. 162, 62 L.Ed.2d 105 (1979). In any event, *Stewart v. Cowan*, 528 F.2d 79 (6th Cir. 1976), cited by petitioner, is inapplicable in light of "substantial direct evidence demonstrating the guilt" of petitioner. 528 F.2d at 85.

### CONCLUSION

For the reasons set forth in the foregoing memorandum, the petition for writ of habeas corpus will be dismissed, and an appropriate Order has been entered this 12th day of March, 1981.