**Jesse Irvin PAYNE, Petitioner-Appellant,**

v.

**Steven SMITH, Steven Beshear, Respondents-Appellees.**

**No. 81-5029.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 8, 1981.

Decided Dec. 24, 1981.

Certiorari Denied April 19, 1982. See 102 S.Ct. 1983.

Jesse Irvin Payne, pro se.

Robert J. W. Howell, Covington, Ky. (Court-appointed), for petitioner-appellant.

Steven Beshear, Atty. Gen. of Kentucky, Robert Bullock, Asst. Atty. Gen., Frankfort, Ky., for respondents-appellees.

Before MERRITT and BROWN, Circuit Judges, and WHITE, District Judge.*

BAILEY BROWN, Circuit Judge.

Appellant Jesse Irvin Payne is seeking habeas corpus relief from a Kentucky conviction of four counts of robbery in the first degree. For the reasons stated below, we affirm the district court's denial of appellant's claims for relief.

## I.

Between 2:15 and 2:30 a.m. on December 31, 1977, two black males entered the Holiday Inn Southeast on Bardstown Road near Watterson Expressway in Louisville, Kentucky. One was armed with a sawed-off shotgun and the other with a .38 caliber derringer pistol. The two men forced three motel employees to lie on each other on the floor and took their wallets. One of these employees, the manager, was then ordered to go to another room and to turn over the money belonging to the motel. After taking the three robbery victims, as well as a guest and a maid who had happened upon the events, to an inner room, the men at-

---

* The Honorable George W. White, United States District Judge for the Northern District of Ohio, sitting by designation.

tempted to block the door and fled by car. As they were driving away, their car, a white over red Cadillac, as well as its license, were observed by one employee who notified the police.

A police cruiser, receiving a description of the robbers' car at about 2:35 a.m., stopped a car about six miles from the motel that met the description of the getaway car. This occurred in less than one hour after the robbery. In the car were the appellant, Jesse Irvin Payne, who was driving, and Johnnie Ray Douglas. Also found in the car, which belonged to Payne, were a loaded sawed-off shotgun on the floorboard on the passenger's side, a loaded derringer pistol under the armrest, an amount of money approximating that taken in the robbery, and a briefcase with contents later determined to belong to one of the robbery victims. The suspects were then taken back to the Holiday Inn where they were positively identified by two of the robbery victims.

Payne and Douglas were subsequently convicted. Their convictions were affirmed by the Supreme Court of Kentucky. *Douglas v. Commonwealth*, 586 S.W.2d 16 (Ky. 1979). All of the arguments discussed below were addressed and rejected by the state supreme court.

Having exhausted their state remedies, the defendants then filed separate petitions for writs of habeas corpus with the United States District Court for the Western District of Kentucky. The district court, in an unpublished decision, denied relief to both petitioners, but we have only Payne's appeal. Payne made all of the contentions in the district court that he makes on this appeal.

The following four questions have been raised on appeal: (1) whether Payne was denied due process of law by being referred to by the trial judge as being in custody at the outset of the trial and by being seen in custody once during the course of the trial, (2) whether Payne was denied due process of law by the trial court's refusal to accept his tendered presumption of innocence instruction, (3) whether the trial court's instruction on reasonable doubt denied Payne his right to due process of law, and (4) whether Payne was put in double jeopardy by the court's determination that the taking of personal property from a motel employee and the taking of cash from the motel cash drawer constituted two separate robberies. These issues will be addressed seriatim.

## II.

At the outset of the trial, and while the jury panel was coming into the courtroom, the trial judge remarked to the sheriff that the defendants Payne and Douglas should consider themselves in custody. The defendants, although expressly conceding that they were unsure whether the jury heard the remark, moved to "disempanel" the jury. The motion was overruled. A similar motion was made and overruled on the second day of the trial when the defendants were returned "in custody" to the courtroom following a luncheon recess.[1]

Payne now argues that he was denied due process of law by these incidents. He points out that he was free on bond when he appeared for trial and contends that the trial judge's remark and his being brought into the courtroom in the custody of the sheriff denied him his right to "the physical indicia of innocence." *See Kennedy v. Cardwell*, 487 F.2d 101, 104 (6th Cir. 1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974).

The Kentucky Supreme Court addressed and rejected this argument in its opinion affirming Payne's conviction:

We, however, agree with the trial court that "it would be impossible as a practical matter to conduct a trial without the jury seeing some sign that the defendants are not entirely free to come and go as they please." The custody here was minimal, and no error was committed.

---

1. It is not precisely clear what occurred at this time. The record only indicates that following the recess the defendants moved for mistrial because "the jury couldn't help but notice the defendants were brought in from custody." App. 105. It appears the defendants were accompanied into the courtroom by the sheriff.

*Douglas v. Commonwealth*, 586 S.W.2d 16, 18 (Ky.1979).

The district court, in denying habeas corpus relief, also examined this argument. It held that, even assuming *arguendo* that the jury had heard the comment, it was nevertheless "harmless beyond a reasonable doubt"[2] in light of the "overwhelming" evidence against the defendants.[3]

■ Although security measures may deprive a defendant of some of the physical indicia of innocence, generally "the degree of security exercised over the person of the defendant is within the trial judge's discretion." *Passman v. Blackburn*, 652 F.2d 559, 568 (5th Cir. 1981). *See also United States v. Gambina*, 564 F.2d 22, 24 (7th Cir. 1977) and *Marion v. Commonwealth*, 269 Ky. 729, 108 S.W.2d 721, 723 (1937). It should be noted that the record does not indicate that Payne was either shackled at any time during the trial[4] or dressed in prison clothing.[5] Instead, Payne urges that he was denied due process of law by virtue of the remark of the trial judge and by being returned to the courtroom "in the custody" of the sheriff following a recess.

In *United States v. Archie*, 656 F.2d 1253 (8th Cir. 1981), the appellant argued that the fact the jury saw him in the custody of United States Marshals "impressed upon the jury that he was dangerous and, thereby, prejudiced him." *Id.* at 1258. The appellant in *Archie* had been accompanied by two marshals in street attire through the door leading from the lock-up after a morning recess while the jurors were seated. The court did not find any prejudice in the incident. *Id.* Similarly, in *United States v. Diecidue*, 603 F.2d 535 (5th Cir. 1979), *cert. denied sub nom. Antone v. United States*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980), and *Miller v. United States*, 446 U.S. 912, 100 S.Ct. 1842, 64 L.Ed.2d 266 (1980), the defendants were observed by the jury venire entering the courtroom flanked by non-uniformed United States Marshals. In affirming the trial court's denial of the defendants' motions for mistrial, the court noted that "[t]he conditions under which defendants were seen were routine security

2. In *Krzeminski v. Perini*, 614 F.2d 121 (6th Cir.), *cert. denied*, 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980), this court noted that "[t]here are two similar approaches to analyzing harmless error when dealing with constitutional violations in a trial setting." *Id.* at 125. The first approach asks, as the district court did here, whether the error was "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), and *Harrington v. California*, 395 U.S. 250, 251, 89 S.Ct. 1726, 1727, 23 L.Ed.2d 284 (1969). The second approach inquires whether "in light of the totality of the circumstances ... the defendant received a constitutionally fair trial." *Kentucky v. Whorton*, 441 U.S. 786, 789, 99 S.Ct. 2088, 2090, 60 L.Ed.2d 640 (1979) (*see* Section III, *infra*). The district court in this instance should have applied the latter standard.

In habeas proceedings we are only concerned, of course, with constitutional error. *Eberhardt v. Bordenkircher*, 605 F.2d 275, 276–77 (6th Cir. 1979). In *Krzeminski*, the court delineated between *Chapman-Harrington* and *Whorton* as follows:

In theory, the *Chapman-Harrington* test is triggered only upon a demonstration of constitutional error while the "totality of the circumstances" approach is used to determine whether admitted error was egregious enough to reach constitutional proportions in the first place.

614 F.2d at 125. The *Chapman-Harrington* test is appropriate, therefore, whenever it can be determined without reference to the totality of the circumstances that constitutional error has been committed; for example, the admission of a defendant's confession in a case where *Miranda* warnings were not given. When, however, it is not clear without reference to the totality of the circumstances whether the error in question reaches constitutional proportions, as in this case, the court should employ the *Whorton* test. In any event, Payne's argument must fall under either approach.

3. *See* Section III, *infra*.

4. Compare *Woodards v. Cardwell*, 430 F.2d 978 (6th Cir. 1970), *cert. denied*, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971) (shackling held to have been abuse of discretion) with *Kennedy v. Cardwell*, 487 F.2d 101 (6th Cir. 1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974) (shackling held not to have been abuse of discretion).

5. *Cf. Estelle v. Williams*, 425 U.S. 501, 505, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 148 (1976) and *Mitchell v. Engle*, 634 F.2d 353, 353–54 (6th Cir. 1980) (jail clothing held harmless beyond reasonable doubt in overwhelming proof of guilt).

measures rather than situations of unusual restraint such as shackling of defendants during trial." *Id.* at 549.

In both *Archie* and *Diecidue* the courts found no showing of actual prejudice. *See also United States v. Robinson*, 645 F.2d 616, 617–18 (7th Cir. 1981) (prejudice cannot be presumed) and *Dupont v. Hall*, 555 F.2d 15, 17 (1st Cir. 1977) (heavy burden on defendant to justify a mistrial). In the instant case Payne concedes that it is uncertain whether the jury heard the remark complained of. While up to this point we have assumed, as did the district court, that the remark was heard, there is no proof that it was. In *United States v. Wright*, 564 F.2d 785, 789 (8th Cir. 1977), the appellants were held not prejudiced by the fact that there "was a possibility" that one of the jurors may have seen the defendants handcuffed in the custody of a marshal. A similar argument was recently disposed by the same court in *United States v. Carr*, 647 F.2d 867 (8th Cir. 1981):

> Appellant in the instant case argues that because several prospective jurors "likely" saw him in handcuffs and a waist chain in a courthouse hallway before trial, he was denied a fair trial. We reject this contention and note that a mere unsubstantiated allegation that prospective jury members "likely" saw a defendant in custody does not satisfy a defendant's burden of affirmatively showing that he was prejudiced.

*Id.* at 868.

■ In light of the foregoing discussion, it is clear that Payne was not denied due process of law by the comment of the trial judge or by being in the custody of the sheriff during the trial. The evidence against Payne was overwhelming, and the appellant did not satisfy his burden of showing prejudice. His argument regarding custody, therefore, must be rejected.

### III.

■ Payne next asserts that the trial court's failure to give the instruction on presumption of innocence that he tendered and its failure in general to instruct the jury on the presumption of innocence denied him a fair trial.

The Supreme Court has previously examined the necessity of the presumption of innocence instruction in light of an accused's right to a fair trial. In *Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), the Court held "that *on the facts of this case* the trial court's refusal to give petitioner's requested instruction on the presumption of innocence resulted in a violation of his right to a fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment." *Id.* at 490 (emphasis added).

A year later, in *Kentucky v. Whorton*, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979), the Court made clear that an instruction on the presumption of innocence is not constitutionally required in every criminal case. Care was taken in distinguishing *Taylor*:

> The Court [in *Taylor*] observed, for example, that the trial judge's instructions were "Spartan," . . . that the prosecutor improperly referred to the indictment and otherwise made remarks of dubious propriety, . . . and that the evidence against the defendant was weak. . . . [citations omitted]. "[T]he combination of the skeletal instructions, the possible harmful inferences from the references to the indictment, and the repeated suggestions that petitioner's status as a defendant tended to establish his guilt created a genuine danger that the jury would convict petitioner on the basis of those extraneous considerations, rather than on the evidence introduced at trial."

*Id.* at 788–89, 99 S.Ct. at 2089–90 (quoting *Taylor v. Kentucky*, 436 U.S. at 487–88, 98 S.Ct. at 1935–36).

The Court then set forth the following guidelines:

> In short, the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution. Under Taylor, such a failure must be evaluated in light of the totality of the circumstances—including

all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial.

*Id.* at 789, 99 S.Ct. at 2090. Applying this test, both the Kentucky Supreme Court and the district court found that the failure to give the tendered instruction in the case at hand, viewed "in light of the totality of the circumstances," did not deprive appellant Payne of a constitutionally fair trial. *See Douglas v. Commonwealth*, 586 S.W.2d 16, 17–18 (citing *Kentucky v. Whorton*, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640).[6] We concur in that conclusion.

The evidence against Payne was overwhelming. Payne and Douglas were found within an hour of the robbery in Payne's automobile, which matched the description given to the police by one of the robbery victims. The letters on the license plate also matched the letters supplied to the police. A loaded sawed-off shotgun and a loaded .38 caliber derringer were found in the car along with an amount of money approximating the amount taken from the motel and the briefcase of one of the robbery victims. The two men were then taken back to the Holiday Inn where they were positively identified.[7] Finally, the police found the victims' wallets at the place where Douglas told them they would be.[8]

Evaluating the failure of the trial court to give the requested instruction in light of the totality of the circumstances—including specifically the overwhelming weight of the evidence against Payne—we conclude that, under *Whorton*, the appellant's right to a constitutionally fair trial was not violated.

### IV.

The next issue concerns the trial court's instruction on reasonable doubt, which was as follows:

> If upon the whole case you have a reasonable doubt as to the guilt of any one or both of the defendants, you shall find that individual defendant, or both individual defendants, not guilty.

---

**6.** The Seventh Circuit has also applied the *Whorton* test and held that, under the totality of the circumstances of the case, the refusal to instruct on the presumption of innocence was not error. *United States v. DeJohn*, 638 F.2d 1048, 1056–59 (7th Cir. 1981). Additionally, in *Hudson v. Sowders*, 510 F.Supp. 124 (W.D.Ky. 1981), the failure to give the requested instruction was held not to have deprived the petitioner of a fair trial in light of the "overwhelming evidence of guilt." *Id.* at 127–28.

**7.** Payne and Douglas were positively identified by Joseph Gnau and Ronald Burkett, victims of the robbery, both upon their return to the Holiday Inn and at trial. Another victim, Richard Cecil, testified that he could not say positively that Payne and Douglas were the robbers. App. 56. Cecil was first ordered on the floor and Burkett and Gnau were then ordered to lie on top of him. Gnau was later ordered to assist in the removal of the motel money from a cash drawer in another room.

As the defendants brought out at trial, there were apparent conflicting reports at trial concerning the identification. Both Gnau and Burkett seemed to indicate that both men were held in the same car. App. 27–28, 47–48. Officers Chism and LaFollette, on the other hand, testified that Payne and Douglas were returned to the motel in separate cars. App. 71, 82. Even taking these conflicting reports into account, however, the identification testimony remains strong. *See* App. 34 (Burkett: "There was no doubt in my mind."), and App. 48 (Gnau: "As soon as I looked at them I could tell they were the men.").

The appellant has also suggested that the "show-up" nature of the identification, objected to at trial, and the trial court's denial of the defendants' motion for severance should both weigh heavily in determining whether the presumption of innocence instruction should have been given. It should be noted, however, that neither of these objections were raised on appeal to the state supreme court or in these habeas corpus proceedings.

**8.** Payne apparently concedes that Douglas was involved in the robbery and that his own car was used, but urges that someone else accompanied Douglas. In other words, Douglas and "Mr. X" committed the crime, left in Payne's car, returned Payne's car to his girlfriend's house where Payne was staying, and left. Payne then left his girlfriend's house, picked up Douglas, and was arrested. This "alibi" defense was presented to the jury, albeit unsuccessfully. It should be noted that both Payne and his girlfriend testified that he left to pick up Douglas at approximately 2:00 a.m. App. 97, 101. The robbery occurred sometime between 2:15 a.m. and 2:30 a.m.

The term "reasonable doubt" as used in these instructions means a substantial doubt, a real doubt, in that you must ask yourself not whether a better case might have been proved, but whether, after hearing all the evidence you actually doubt that the defendant in question is guilty.

Appellant asserts that this definition of reasonable doubt was constitutionally infirm and deprived him of due process of law.

The definition is substantially the same as the one given in *Taylor v. Kentucky.* The Court in *Taylor,* while criticizing this definition as "confusing," held that it was "perhaps not in itself reversible error . . . ." 436 U.S. at 488, 98 S.Ct. at 1936. Since *Taylor* the Kentucky Supreme Court has on at least two occasions declined to hold the instruction unconstitutional. *See Whorton v. Commonwealth,* 570 S.W.2d 627, 631 (Ky. 1978), *rev'd on other grounds,* 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979), and *Douglas v. Commonwealth,* 586 S.W.2d 16, 18 (Ky.1979).[9]

Other courts have also held that equating reasonable doubt with "substantial doubt" does not constitute reversible error. *See Hatheway v. Secretary of Army,* 641 F.2d 1376 (9th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 324, 70 L.Ed. 164 (1981), and *United States v. Rodriguez,* 585 F.2d 1234 (5th Cir. 1978), *cert. denied sub nom. Albernaz v. United States,* 449 U.S. 818, 101 S.Ct. 69, 66 L.Ed.2d 20 (1980) and 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980). In *Hudson v. Sowders,* 510 F.Supp. 124 (W.D.Ky.1981), Judge Ballantine, the district judge below, also refused to hold the instruction at issue unconstitutional:

> The Court recognizes that the reasonable doubt instruction given is the same as that criticized in *Taylor v. Kentucky,* 436

U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). *Taylor,* however, did not hold the instruction per se unconstitutional, nor is this Court willing to do so.

*Id.* at 128. In light of these decisions, and in light of the "totality of the circumstances," we hold that the trial court's instruction on reasonable doubt was constitutionally adequate.

## V.

Payne finally argues that his convictions for armed robbery of Mr. Gnau, the manager of the Holiday Inn, and the Holiday Inn itself amounted to double jeopardy. The Double Jeopardy Clause, *inter alia,* protects against multiple punishment for the same offense, and Payne asserts that the taking of Gnau's wallet and the taking of the motel's money constituted a single robbery.

The Kentucky Supreme Court disagreed, and found no double jeopardy violation:

> Appellants forced Gnau at gunpoint to surrender his wallet, then ordered him to accompany Douglas to another room to open the motel cash register. Under KRS 515.020, a person is guilty of first-degree robbery when he is armed with a deadly weapon and threatens the use of deadly force upon another person while in the course of committing theft. The taking of Gnau's wallet and the taking of the motel's money clearly constituted two separate thefts. The fact that the same person was threatened during the commission of each theft in no way merges the two offenses into a single robbery.

*Douglas v. Commonwealth,* 586 S.W.2d 16, 18 (Ky.1979). The district court also found two separate and discrete robberies for either of which, standing alone, the appellant could have been convicted.[10]

---

**9.** It should be noted that the Kentucky Supreme Court, in the wake of the *Taylor* case, revised its rules of criminal procedure to require an instruction on the presumption of innocence. The court also directed that the instructions should not attempt to define the term "reasonable doubt." *See Kentucky Rules of Criminal Procedure* 9.56; *Kentucky v. Whorton,* 585 S.W.2d 388, 389 (Ky.1979). These

revisions, however, were not in effect at the time of Payne's trial.

**10.** Under similar circumstances, the District of Columbia Court of Appeals held that two distinct offenses were perpetrated when both the property of the store owners and the wallet of the store employee were taken at gunpoint by the robbers. *United States v. Diggs,* 522 F.2d 1310, 1323 (D.C.Cir.1975), *cert. denied sub*

We agree that the prohibition against double jeopardy was not violated here. The robbery of Gnau and the robbery of the motel were separated both by time and distance, occurring in two different rooms. The Kentucky Supreme Court held that, under Kentucky law, two separate offenses were committed. A determination of state law by the supreme court of that state is binding on this court. *See Hall v. Wainwright*, 493 F.2d 37, 39 (5th Cir. 1974).

## VI.

We therefore conclude that, for the reasons expressed above, the judgment of the district should be and is AFFIRMED.

WHITE, District Judge, dissenting in part, concurring in part.

The majority today concludes that the state court's failure to instruct the jury on the presumption of innocence, viewed "in light of the totality of the circumstances." did not deprive the appellant of a constitutionally fair trial. Ante at 545–546.

Although I agree with the majority that an instruction on the presumption of innocence is not constitutionally required in every criminal case, under *Taylor, supra* and *Whorton, supra*, I respectfully dissent from their conclusion that [in light of the totality of the circumstances of this case] the trial court's failure to instruct on the presumption of innocence did not deprive petitioner Payne of a constitutionally fair trial.

In reviewing the record, I cannot agree with the majority that "[T]he evidence against Payne was overwhelming." Ante, at 546. The evidence against the petitioner's *co-defendant* Douglas was certainly overwhelming, but I do not believe that the evidence against Douglas has been sufficiently distinguished from the evidence against Payne.

The record reveals that although Payne and Douglas were found in Payne's automobile, which matched the description of the getaway car, Douglas admitted on cross examination that: the weapons found in the

automobile belonged to him; he alone put them there and he used Payne's car that evening without Payne being in it. Also, the victims' wallets were found by the police where *Douglas*, not Payne, had indicated. I am further troubled by the prejudicial effect on Payne of the police officer's testimony that Douglas remarked that his nocturnal occupation was stealing. App. 85–86.

The show up nature of Payne's identification, while handcuffed, either in a squad car or led from a squad car by a uniformed police officer was highly suggestive and prejudicial. The record reveals that victims Gnau and Burkett identified Douglas as the offender with the shotgun. It is evident from the record that both Gnau and Burkett had a better and longer opportunity to observe Douglas than they had to observe Payne. The parading of Payne with the more readily identifiable Douglas before the victims was also overly suggestive and prejudicial to the petitioner. Gnau's and Burkett's affirmative in court identification of Payne does not entirely resolve this issue. In *Taylor, supra*, the Supreme Court reversed the petitioner's conviction where inter alia, the victim "testified that he had known the petitioner for several years and had entertained petitioner at his home on several occasions." 436 U.S. at 480, 98 S.Ct. at 1932. The Court concluded that the "risk [of the jury inferring guilt from the fact of arrest and, indictment without an instruction on the presumption of innocence] was heightened because the trial essentially was a swearing contest between victim and accused." 436 U.S. at 488, 98 S.Ct. at 1936.

Lastly, the petitioner's joint trial with an allegedly admitted bedtime bandit further blurred the the necessary distinction of evidence against Payne and overwhelming evidence against Douglas.

Other factors which convince me that the trial court's failure to instruct on the presumption of innocence deprived petitioner of a constitutionally fair trial are the view

nom. *Floyd v. United States*, 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976).

of the defendants in custody by the jury, the trial court's remarks when the jury entered that the defendants should consider themselves in custody,[1] and finally, the trial court's instructions and charge to the jury on the burden of proof.

At the outset of the trial the Court instructed the jury that:

"... The defendant in a criminal trial does not have to testify if he doesn't want to, and you must draw no inference from the fact that a defendant may not testify. The burden is on the Commonwealth to prove that the defendant is guilty beyond a reasonable doubt. A defendant is entirely justified in sitting without saying anything *if he feels that the Commonwealth has not supported the burden which it has* ..."

App. A–17 (emphasis added).

By instructing the jury that a defendant's silence was justified if he felt the Commonwealth has not supported its burden, the Court inferred that if the defendant did not remain silent, the Commonwealth has supported its burden. This clearly shifted the burden of proof to defendant and vitiated the defendant's presumption of innocence.

Lastly, the trial court charged the jury that reasonable doubt was substantial doubt. Although this equation of reasonable doubt with substantial doubt is not reversible error, as the majority points out, ante 546–547, this charge considered in light of the circumstances outlined above, deprived the petitioner of a constitutionally fair trial.

I join the majority in their opinion that the prohibition against double jeopardy was not violated.

---

1. As the majority points out, the record does not reflect whether the jury actually heard the trial court's comments.