822 F.2d 60
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Douglas ARTHUR, Defendant-Appellant.
 No. 86-5818
 United States Court of Appeals, Sixth Circuit.
 June 30, 1987.
 
 Before KEITH, KENNEDY and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant appeals his jury conviction for bank robbery, assault and commission of a crime of violence by use of a firearm. The defendant assigns several errors for our review and, in addition, challenges the sufficiency of the evidence to sustain his conviction. For the reasons set forth below, we affirm.
 
 
 2
 On February 28, 1986, the defendant and a confederate, Steven Bales, robbed the Valley Fidelity Bank & Trust Company in Knoxville, Tennessee. During the robbery, both men wore disguises prepared by Pam Morrow. After the robbery, the disguises were recovered from the defendant's hotel room, along with $1,961.00, of which thirty-two bills were 'bait bills' taken from the bank.
 
 
 3
 To complete the robbery successfully, defendant and Bales needed a getaway car. They kidnapped Elverna Boyd, dropped her off in the woods, unharmed, and took her car. At trial, Ms. Boyd positively identified the defendant as one of her kidnappers.
 
 
 4
 The bank tellers testified that two men robbed the bank. The man who took the money had medium brown hair under a black wig. The defendant contends that because he has bleached blond hair, he could not have been one of the robbers. However, a wig fiber taken from the bank was compared to a wig found in the defendant's hotel room after the robbery. The FBI laboratory results indicate that the fiber came from either defendant's wig, or from an identical wig.
 
 
 5
 The defendant also contends that because he was two very distinctive gold teeth, he does not match the description of the robber who took the money. Bales and Morrow pled guilty to the charges against them and testified at the defendant's trial that as part of his disguise, the defendant painted his gold teeth white.
 
 
 6
 The defendant testified in his own behalf. He told the jury that Bales had asked him for advice on robbing the bank. The defendant gave advice and prepared 'bank robbery notes' for Bales which were also recovered from his hotel room. Later, after Bales robbed the bank, he came to the defendant's hotel room with the wigs, other disguise devices and the money for safekeeping. The jury disbelieved this story and returned a verdict of guilty.
 
 
 7
 In his first assignment of error, the defendant contends that he was unduly prejudiced by extra security measures which predisposed the jury to view him as a dangerous man. The extra measures included taping off the spectator seats directly behind the defense table and the presence of three marshals in the courtroom. When the defendant testified, one of the marshals escorted him to and from the witness stand.
 
 
 8
 The trial court has broad discretion in determining what, if any, security measures are necessary in a criminal trial. Payne v. Smith, 667 F.2d 541, 544 (6th Cir. 1981), cert. denied, 456 U.S. 932 (1982). The defendant in the instant case was a convicted murderer, awaiting trial for a second murder, who killed a guard while escaping from custody. The crime for which he was being tried was one of violence involving kidnapping and the use of firearms. The district court did not abuse its discretion in providing extra security.
 
 
 9
 Second, the defendant contends that the district court erred in refusing to compel disclosure of FBI interview memorands (FBI 302's) under the Jencks Act, 18 U.S.C. Sec. 3500. The FBI 302's were prepared by an FBI agent from his recollection of what the witnesses had said during interviews. The agent testified that he wrote down only what he felt would be useful at trial and never explained or showed the notes to any witness at any time. The district court did not err in determining that the FBI 302's did not contain witness statements within the meaning of Sec. 3500(e)(1). See United States v. Padin, 787 F.2d 1071 (6th Cir.), cert. denied, ---- U.S. ----, 107 S. Ct. 93, 93 L. Ed. 2d 45 (1986).
 
 
 10
 Third, the defendant contends that the district court violated his due process rights by refusing to exclude Elverna Boyd's in-court identification. It appears that, just after the robbery, Ms. Boyd saw the defendant's picture in the newspaper and recognized him as one of her kidnappers. Also, prior to trial, Ms. Boyd was shown an array of 'mug shots' from which she unequivocally identified the defendant. The defendant argues that the in-court identification was the direct result of the photo identification which was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' Simmons v. United States, 390 U.S. 377, 384 (1968).
 
 
 11
 The defendant has not carried his burden of showing that the photo array was impermissibly suggestive. He failed to develop testimony at trial regarding the circumstances surrounding the photo identification. Simmons, id. However, even had defendant shown the array to be suggestive, under the 'totality of the circumstances' the identification was reliable. Neil v. Biggers, 409 U.S. 188, 199 (1972). Ms. Boyd testified that her recognition of the defendant at trial was based upon her personal observation of him during the kidnapping. She sat next to him for approximately 15 minutes during which time he spoke to her. She had ample opportunity to observe him. She testified that she could never forget his 'big dark eyes'. Additionally, although Ms. Boyd unequivocally identified the defendant, she was not able to identify Bales. The district court did not err in refusing to strike Ms. Boyd's in-court identification.
 
 
 12
 Fourth, the defendant contends he was denied a fair trial by the admission into evidence of other crimes. In a motion in limine the district court held that evidence concerning the defendant's other criminal involvement inadmissible. After the defendant took the stand, he was cross-examined concerning his assertion on direct examination that he won his car in a poker game. The defendant contends that he was forced to assert the fifth amendment because the questioning related directly to his escape from an Alabama jail. However, because defendant refused to respond to the questions, the transcript is devoid of testimony concerning other crimes. The district court held the evidence inadmissible and no evidence was admitted. Consequently, we reject the defendant's contention.
 
 
 13
 Fifth, the defendant contends that the district court erred in refusing to poll the jury concerning access to newspaper publicity. However, the court did in fact poll the jury collectively upon defendant's request. This was sufficient. United States v. Hankish, 502 F.2d 71, 77 (4th Cir. 1974).
 
 
 14
 Sixth, the defendant contends that the certificate of FDIC insurance was improperly admitted hearsay. The United States correctly points out that the certificate was properly admitted as a self-authenticated public record under Fed. R. Evid. 803(8) and Fed. R. Evid. 902.
 
 
 15
 Seventh, the defendant contends that the court erred in failing to charge the jury on the issue of mistaken identity. However, because he did not object after the instructions were given, the defendant waived this contention. Fed. R. Crim. P. 30. In any event, unless mistaken identity is a key issue in the case, the district court has discretion not to instruct the jury. United States v. Hodges, 515 F.2d 650, 652 (7th Cir. 1975). Despite defendant's contentions regarding his bleached blond hair and gold teeth, there was more than sufficient evidence that he was the bank robber who kidnapped Ms. Boyd. Mistaken identification was not an issue reasonably raised by the en banc in this case. The district court did not err in its charge to the jury.
 
 
 16
 Eighth, because so many police officers testified, defendant contends that a cautionary instruction about police officer testimony should have been given to curtail the possibility of juror bias. Again, the defendant did not object at the proper time, although he did express his desire to have this instruction given during a charging conference. Nevertheless, we find that the instructions given were adequate and the district court was not required to instruct the jury that police officers' testimony should be considered with caution. Cf. Bush v. United States, 375 F.2d 602, 604-05 (D.C. Cir. 1967).
 
 
 17
 Finally, the defendant argues that the evidence of his guilt is not sufficient to support the jury's verdict of conviction. It is our considered opinion, however, that a rational jury could not have acquitted this defendant. The evidence of guilt is more than substantial; it is overwhelming. See Glasser v. United States, 315 U.S. 60, 80 (1942). See also Chapman v. California, 386 U.S. 18 (1967).
 
 
 18
 The conviction is AFFIRMED.