Marshall, C. J.
 

 This is an error proceeding seeking the reversal of a conviction of first degree murder without recommendation of mercy had in the court of common pleas of Belmont county, Ohio, which conviction was affirmed by the Court of Appeals. The first assignment of error is that the trial court erred in overruling a motion challenging the array of the petit jury. The cause was originally assigned for trial on November 20, 1922. The prosecuting attorney filed a precipe for a special venire on October 30, 1922, the same was served by the sheriff, and the return, showing manner of service, was indorsed upon the precipe, but the sheriff neglected to sign the same, and filed the unsigned return on November 4, 1922. On November 18, 1922, the sheriff observed the omission and obtained the venire from the clerk, signed the return and again deposited it with the clerk. On the day set for the trial, the motion challenging the array was filed, on the ground that a signed return had not been filed at least 15 days before the date fixed for the trial, as required by Section 13642, General Code. The court overruled the motion, but continued the case until November 24, 1922. On that date the motion was renewed and
 
 *79
 
 again overruled, and the cause again continued until December 11, 1922, at which time the motion was again renewed, again overruled, and the jury impaneled and the trial begun. Section 2834, General Code, and .Section 13645, General Code, clearly enjoin upon the sheriff the duty to sign the return before filing it. These sections are mandatory in the sense that the sheriff could be compelled to perform the duty if he refused to do so. But it does not follow that all of his acts prior to the time of filing the venire with the clerk unsigned were void and of no effect. Neither does it follow that he might not amend and supply the omission by signing the return upon discovering the omission. By the provisions of the statutes referred to, the accused was entitled to have the names of the persons served with process for jury duty for a period of 15 days before the day fixed for trial, and, if that right had been denied, a serious question would have been presented for our consideration. It is apparent, however, that counsel for the accused in an unofficial way had opportunity to know the names of the prospective jurors from and after November 1, and knew those names in an official way from November 18 to December 11, a period of 23 days before the trial began. Nowhere in this record does it appear that the accused was prejudiced by the inadvertence of the sheriff, or that the personnel of the jury, as finally accepted, was otherwise than it would have been if the venire had been signed when first deposited on November 4. Neither does it appear that any complaint is made of a single member of the jury which rendered the verdict. The trial court hav
 
 *80
 
 ing ruled upon these matters, and a verdict having been rendered, and a motion for new trial having been filed alleging these matters, and that exceptions were properly reserved, the question for determination at this time is whether the motion for new trial should have been sustained on that ground. We must therefore turn to the statutory provision which defines the duty of the court in passing upon the motion for a new trial. This duty is defined by Section 13745, General Code, which provides in part as follows:
 

 “A new trial, after a verdict of conviction, may be granted on the application of the defendant, for any of the following causes
 
 affecting materially his substantial
 
 rights(Italics ours.)
 

 Having already observed that the irregularities referred to have not been shown to materially affect the substantial rights of the accused, the motion for new trial should not have been granted; neither can this court say that prejudicial error intervened on this point.
 

 Aside from the provisions of the section providing for new trial, attention should be called to Section 11436, General Code. This section has been called to our attention by counsel for the accused, and counsel have quoted the following portion:
 

 “A
 
 challenge to the array may be made and the whole array set aside by the court, when the jury, grand or petit, was not selected, drawn or summoned, or when the officer who executed the venire did not proceed as prescribed by law.”
 

 It should be noted in the first place that the language quoted is permissive, and not peremp
 
 *81
 
 tory, in form, thereby leaving a sound discretion with the trial judge, and it cannot be said at this time that the trial judge abused his discretion, because it does appear that the venire was executed and the jurors were summoned, which is the substantial and essential thing commanded by the sections hereinbefore referred to, and the omission by the sheriff was of a mere formal duty required of him. We find, however, that the latter part of the section is peculiarly pertinent to and decisive of this matter:
 

 “But such challenge shall only be made before the jury is impaneled and sworn, and no indictment shall be quashed or verdict set aside for any such irregularity or misnomer if the jurors who formed the same possessed the requisite qualifications to act as jurors.”
 

 Having heretofore observed that no complaint is made of the requisite qualifications of the jurors who rendered the verdict, this assignment of error must be definitely overruled.
 

 Another assignment of error is that the Court of Appeals corrected the bill of exceptions by changing the name “Charles Conrad,” as it appeared in the bill in many places, to “Charles Conard,” the real name of the victim of the homicide. Section 11572a authorizes the correction of errors as follows:
 

 “When justice requires it upon notice to all parties, an omission in a bill of exceptions, occurring through accident or error, may be corrected by the reviewing court, or it may be remanded to the trial court for such correction.”
 

 The language of that section taken in connection
 
 *82
 
 with its title clearly justified the Court of Appeals in making the correction. It should be added, however, that even without the statutory authority of that section it would not be prejudicial error on the part of the court in ordering the correction. In the case of
 
 Goodlove
 
 v.
 
 State,
 
 82 Ohio St., 365, 92 N. E., 491, 30 L. R. A. (N. S.), 134, 19 Ann. Cas., 893, decided in 1910, this court reversed a conviction upon grounds somewhat similar to the point now under discussion, but that decision was a distinct shock to the bench and bar, and the doctrine of that case has been heretofore repudiated by this court. The technical refinements of the opinion in that case do not strike a responsive chord in this court as at present constituted. Therefore upon principle as well as upon statutory authority this assignment of error must also be overruled.
 

 The third assignment of error is that the court erred in the charge to the jury. In order to intelligently discuss that question it will be first necessary to make a short review of the facts disclosed by the evidence. Edward Long came to Barnesville, in Belmont county, in September, 1922, where he became acquainted with Charles Conard, a taxi driver, whom he employed to transport him to various parts of Belmont county, and in the course of such transportation Long shot Conard twice in the back with an automatic pistol, of which wounds Conard instantly died. Long then drove the machine containing Conard’s body a devious course, finally arriving on what is known as the Plainfield road, where he removed the body from the car to the side of the road and covered
 
 *83
 
 it with a blanket. He then drove the machine to Lloydsville, St. Clairsville, Wheeling, W. Va., East Steubenville, W. Va., Steubenville, Ohio, Toronto, Ohio, and to Wellsville, Ohio, where he turned the car over to a stranger named Vester, whom he had picked up on the way, and then disappeared. After traveling through various cities in the United States and Canada, he returned to Wellsville, where he was arrested. Soon thereafter he made a confession to the deputy sheriff of Jefferson county, and later confessed to one Mahoné of Bellaire, Ohio, and one Hubbard of St. Clairsville, Ohio, which confessions were reduced to writing. In the confessions Long admitted the homicide, and made the further statement, among others, that he was “pretty drunk” and “good and drunk.” The confessions contained other defensive matters which are not pertinent to the present inquiry. Outside of these confessions there was abundance of other evidence tending to prove guilt of the crime charged in the indictment, and tending to prove malice and premeditation and deliberation. The error complained of is the following part of the charge:
 

 “And, if you should find, by a preponderance of the evidence, that the defendant was intoxicated to such an extent that he was incapable of distinguishing between right and wrong, and of knowing what he was doing, or forming an intent in shooting the deceased — if he did so — then the defendant would not be guilty in this case, and you should so find by your verdict.
 

 “If it has been proven to you, by a preponderance of the evidence, that he was incapable of dis
 
 *84
 
 tinguishing between right and' wrong, and incapable of forming an intent, you should acquit him, and if he was intoxicated to such an extent that he could not deliberate and premeditate, then, in that event, the offense would be reduced from murder in the first degree to a lesser offense. But you should look carefully to all of the evidence as to the condition of the defendant, and as to his claim of intoxication.
 

 “You must keep in mind, however, in the consideration of this case that the burden of proof of this claim is upon the defendant, and he must prove his claim to you by a preponderance or greater weight of the evidence.”
 

 Counsel for the accused contend that these instructions constituted error, because, first, the defendant was not claiming intoxication as a defense, and second, because intoxication was only pertinent to the inquiry as showing inability of the accused to meditate and deliberate, that the burden was upon the state to prove premeditation and deliberation, and that therefore the burden did not rest upon the accused to prove such mental incapacity by a preponderance of .the evidence. On the first of these contentions we have reached the conclusion that it is very clear from this record that intoxication was one of the defenses to this prosecution. This first clearly appeared in the opening statement to the jury by counsel for the accused, which in some detail made the claim that the evidence would show that the accused had obtained intoxicating liquors in B arnésville and had drunk perhaps a quart of liquor on the night of the homicide; that he was seeking to engage in
 
 *85
 
 the unlawful traffic in liquors, and was fully under the control of intoxicating liquor at the time of the homicide. No evidence was introduced by the defendant on this subject, but the benefit of that portion of the confession which claimed a state of drunkenness was asserted by counsel for the accused, and, based upon that meager information, medical experts were called by the defendant, to one of whom was submitted a hypothetical question, in which was incorporated the element of intoxication, who testified that intoxication would “interfere with his ability to form an intent.” Again, after the evidence was all introduced, counsel for the accused submitted six different requests for instructions to the jury, involving the question of intoxication, and two of these requests were allowed, and the contents thereof submitted to the jury. It therefore clearly appears that intoxication was one of the defenses, not only upon the question of premeditation and deliberation, but also upon the question of intent to kill. The statements in the confessions pertaining to drunkenness became a necessary part of the record, because when the confessions were introduced it was of course necessary to introduce the entire confessions, including the statements of drunkenness. The statements of drunkenness did not, however, become binding upon the state, because they were not deliberately introduced by the state, separate and distinct from the confessions of the accused, neither did any witness called by the state testify to having any knowledge of intoxication of accused, nor does any sworn testimony upon the subject of intoxication appear in the record. It being
 
 *86
 
 necessary to introduce the whole of the confessions the jury were at liberty to weigh each and every part thereof, giving to those statements which were against the interest of the accused such weight as usually attaches to admissions against interest, and they were also at liberty to give to those statements which were favorable to the accused such weight as may properly attach to self-serving declarations. The accused was not obliged to avail himself of those portions of the confessions stating intoxication, but having done so, and having made use of them as a basis of expert testimony, and having definitely requested the court to charge in relation thereto, and the court having charged in relation thereto, and such instructions reaching both to the question of intent to kill and the subject of premeditation and deliberation, it must be said that the accused has claimed intoxication as a defense to the prosecution, as well as in support of the claim of want of premeditation and deliberation.
 

 It is well established in American jurisprudence that drunkenness is not a defense to crime. When all the elements of a criminal act have been proven, the accused will not as a general rule be heard to allege his voluntary intoxication as an excuse. It is an exception to this general rule that one who is accused of a crime, the definition of which involves some specific intent, or the operation of other mental processes, intoxication, though voluntary, may be considered in determining whether or not the act was intentional, or, as in cases of first degree murder, involving the element of delibera tion and premeditation, the fact of intoxication
 
 *87
 
 may be considered to determine whether deliberation and premeditation existed.
 

 The Ohio statutory definition of first degree murder involves both the elements of intentional killing and deliberation and premeditation. And it has therefore been recognized by the former adjudications of this court, in
 
 Nichols
 
 v.
 
 State,
 
 8 Ohio St., 435;
 
 Davis
 
 v.
 
 State,
 
 25 Ohio St., 369, and
 
 Cline
 
 v.
 
 State,
 
 43 Ohio St., 332, 1 N. E., 22, that intoxication is admissible to show that no crime has been committed, or to affect the degree or grade of the crime. The principles of law have been fully discussed in those cases, and it is unnecessary to further discuss the same or repeat any of their pronouncements. It should be stated, however, that in all those cases, and in fact throughout the adjudications on this subject, the courts have repeatedly called attention to the danger of giving undue weight to the fact of drunkem ness and to the necessity for caution in admitting evidence pertaining to intoxication and applying the rules of law thereto. It is equally well settled by the adjudications of this state and other states that, in order to render the accused guiltless, the intoxication must be so great and complete as to make him incapable of forming the intent, or of acting with deliberation and premeditation, thereby placing the subject of intoxication as a defensive element in prosecutions for crime, so far as the degree of mental capacity is concerned, upon the same basis as insanity. The trial court in the instant case was in some respects erroneously favorable to the accused. The court, upon the request of counsel for the accused, charged the jury:
 

 
 *88
 
 “The court charges you that if the defendant, at the time of the killing, was so intoxicated as not to be capable of forming the design to take life,
 
 or of entertaining malice,
 
 such drunkenness would then reduce the offense which might otherwise be murder, to manslaughter.”
 

 That portion of the above-quoted language relating to malice is erroneous, and in conflict with
 
 Nichols
 
 v.
 
 State,
 
 8 Ohio St., 435. The accused, of .course, is in no position to complain of instructions which were altogether favorable to him. The trial court correctly instructed the jury upon the presumption of the innocence of the accused that this protection which the law thus throws around the accused remains and abides with him throughout the trial, and that this presumption must be overthrown by proof beyond a reasonable doubt of each and all of the material facts and elements necessary to constitute the crime charged, including the elements of premeditation and deliberation and intent to kill. These matters were charged with some prolixity and repetition. No complaint is made upon this score, neither do counsel for the accused deny that the burden properly rests upon the defendant to prove by a preponderance of the evidence the fact of intoxication in the degree already stated in regard to the element of intentional killing. It is only contended that the burden should not have been imposed upon the defendant to prove by a preponderance of the evidence the fact of intoxication so far as it relates to the subject of premeditation and deliberation. It is not difficult to discern a technical distinction between matter which is generally defensive, as tending to
 
 *89
 
 show that no crime has been committed, and matter which is specially defensive, as not controverting the fact that some crime has been committed, but nevertheless tending to show that it was another crime of the same character but of less degree. This distinction is extremely technical, and, if it exists at all, might be made apparent to the legally trained mind, but it can have no practical value to the average juror, and the clearest instruction upon such an attempted distinction is most likely to result in confusion rather than an aid to a just verdict. Its only value to accused persons is the advantage which frequently accrues' to the guilty by confusing the minds of jurors, and it is to that extent necessarily subversive of the rights of the public, and detrimental to the cause of justice. If a trial court should attempt to draw such a distinction in instructing the jury, the court would have to say that the burden of proof is upon the defendant to establish by a preponderance of the evidence that he was so intoxicated as not to be able to form an intent to commit the crime, but that he does not have the burden of proving by a. preponderance of the evidence that his mental condition was such by reason of intoxication that he could not premeditate and deliberate upon its commission. In order to establish such a distinction, it would first be necessary to show that forming an intention is a wholly different mental process from that of meditation and deliberation; in other words, that it requires a different kind or possibly a higher degree of mentality to meditate and deliberate than that required to form a judgment. It would seem that the contrary should be
 
 *90
 
 true. An intention involves the reaching of a conclusion, the formation of a deliberate judgment, while premeditation and deliberation are only the preliminary processes, and the necessary processes, whereby a mental conclusion or judgment can be reached.
 

 Any attempt upon the part of a trial judge in the course of instructing the jury in a first degree murder case to lay down distinctions, and a different rule as to the burden of proof, where intoxication becomes a material element, between the intent to Mil, on the one hand, and premeditation and deliberation upon the other, must lead to such technical niceties and refinements as to result in a great variety of expression on the part of trial judges, and a wide difference of opinion as to the soundness thereof on the part of reviewing courts. The inevitable result of any such attempt is to cause persons untrained in the law to entertain the opinion that our criminal jurisprudence is involved in a cloud of mystery.
 

 This legal problem must be solved by the application of the principles pertaining to the subject of the burden of proof. It is elementary and fundamental that the burden of proof must be sustained by the party upon whom it rests by first introducing evidence. That is to say, the duty of introducing evidence upon any cause or defense is first incumbent upon the party who asserts such cause or defense, and who would fail if no evidence were introduced. If it is the duty of the state in all cases to negative the fact of intoxication as a part of the case in chief, and if sobriety is an element necessary to be established by the state,
 
 *91
 
 then of course the burden would rest upon the state, not only to introduce evidence upon that point as a part of the case in chief, but also to establish the same beyond reasonable doubt. This would be true only if the statutory definition of murder contained a proviso excepting intoxicated persons from its operation. No one would contend that in a first degree homicide case any obligation rests upon the state to affirmatively establish sobriety, and everyone concedes that the element of intoxication is defensive, and it follows that the burden is upon the accused.
 

 There are many defenses to crime which must be affirmatively sustained by the accused. It is unnecessary to discuss or even enumerate such de fenses, but of the entire list there is no defense more favored or more meritorious than that of insanity. And yet by the repeated adjudications of this court, in
 
 Loeffner
 
 v.
 
 State,
 
 10 Ohio St., 598;
 
 Bond
 
 v.
 
 State,
 
 23 Ohio St., 349;
 
 Bergin
 
 v.
 
 State,
 
 31 Ohio St., 111;
 
 Kelch
 
 v.
 
 State,
 
 55 Ohio St., 146, 45 N. E., 6, 39 L. R. A., 737, 60 Am. St. Rep., 680;
 
 State
 
 v.
 
 Austin,
 
 71 Ohio St., 317, 73 N. E., 218, 104 Am. St. Rep., 778, and others, insanity is an affirmative defense imposing upon the accused the burden of establishing such defense by a preponderance of the evidence. Voluntary intoxication has by the great weight of authority always been held to be an unfavored defense, and limited in its application, and it would therefore be a distinct retrogression and an encouragement to the criminal classes, especially to those of murderous propensities, if this court should in this case draw distinctions' in first degree murder eases between the ele
 
 *92
 
 ment of purpose to kill, on the one hand, and the element of premeditation and deliberation on the other. And it would be even more dangerous to draw the distinction between malice connected with the act of killing and malice connected with forming the purpose to kill.
 

 While we are fully convinced of the soundness of the conclusions we have reached in this matter, a careful reading of this record would disclose that it is impossible to prejudice the accused in this case by any error upon the subject of intoxication. The record discloses that the accused, after the homicide, drove the car during the same night a long distance, by a devious course, through a number of cities and villages, and over uneven highways, without casualty, or mishap, and without anything to indicate that his condition was otherwise than normal. It should further be noted that there is no sworn testimony in this record on the subject of drunkenness. Nowhere in the testimony does the subject of intoxication appear, except in the confessions of the accused, and it is apparent that these confessions were made when his guilt clearly appeared by overwhelming testimony, and it is not at all improbable that his confessions were designed to involve in the case the elements of intoxication and the want of purpose to kill, the confessions being liberally surcharged by him with those statements. It should further be noted that the defendant did not take the stand in his own behalf, and did not submit himself to the cross-examination of counsel for the state, and his confessions, as well as his conduct, as shown by this entire record, are therefore subject to all infer
 
 *93
 
 enoes which can reasonably be drawn from his failure to testify in his own behalf.
 

 Many of our technical rules of criminal procedure are the relics of the early English jurisprudence, when even petty larceny was a capital offense, and when the courts therefore seized upon every technicality to overcome the rigors of punishments for crimes of that early period, and so many of those technicalities are still maintained even at this late date, notwithstanding the wonderful progress which has been made in other fields, notwithstanding the fact that cruel and unusual punishments can no longer be inflicted, and notwithstanding the fact that so many statutory and constitutional safeguards have been thrown around persons accused of crime, that it has become an extremely difficult matter to conduct, free from error, the trial of persons accused of crime. The courts are slowly but surely eliminating many of the senseless technicalities which have so long prevailed in the administration of criminal law, and we would be grossly remiss in our duty if we should, at this time, take a backward step upon the propositions herein involved. Each of the three assignments of error is found not to be sustained, and the judgment of the lower courts will be affirmed.
 

 Judgment affirmed.
 

 Wanamaker, Robinson, Jones, Matthias, Day and Allen, JJ., concur.