## SOUTHARD v. THE STATE OF OHIO.

*Criminal law—Murder in attempting to perpetrate robbery—*
*Guilt beyond reasonable doubt established by evidence—*
*Indictment not defective because facts constituting at-*
*tempt not set forth—Section 13581, General Code.*

1. In prosecution for murder while attempting to perpetrate
   robbery, evidence *held* sufficient to show guilt of murder
   beyond reasonable doubt.
2. In an indictment for murder in the first degree while per-
   petrating a robbery, it is not necessary to set out the
   facts which constitute an attempt to perpetrate the rob-
   bery, but the indictment is sufficient in this respect if it
   charges that the defendant, while attempting to perpe-
   trate a robbery, did unlawfully and purposely kill and
   murder the deceased.

(Decided June 7, 1926.)

ERROR: Court of Appeals for Lucas county.

*Mr. Lionel Levy,* for plaintiff in error.
*Mr. Roy R. Stuart,* prosecuting attorney, and *Mr.*
*John C. Cochrane,* for defendant in error.

RICHARDS, P. J. The plaintiff in error, James
Harding Southard, was tried on an indictment
charging him with unlawfully and purposely killing
one Fred Wengert while attempting to perpetrate
a robbery. The jury returned a verdict of guilty
as charged in the indictment, but recommended
mercy, and he has been sentenced accordingly. His
companion in the commission of the crime was one
William Mahoney, who has been convicted and sen-
tenced for the same offense.

We are asked to reverse the judgment in the

present case on the ground that it is against the weight of the evidence, and for error in the admission of evidence, in the charge of the court, and in the refusal to charge, and because no offense is stated in the indictment.

The evidence shows that about 3 o'clock in the morning of October 8, 1925, Mahoney and Southard entered a restaurant on Adams street in the city of Toledo which is kept open all night. Three or four other patrons were in the restaurant at the time, besides the cashier at the cash register and some other employees. Mahoney went to the rear of the restaurant, and Southard remained in the end of the restaurant next to the street. Wengert, who was a milkman starting on his rounds, had called to get something to eat and was seated near Southard. Shortly after Mahoney and Southard had given their orders Mahoney drew two revolvers, pointing one toward the kitchen and one toward the front of the restaurant, and ordered all present to hold up their hands. Thereupon Southard drew a revolver and ordered the persons near him to hold up their hands. The employees and the patrons, except Wengert, complied with the order, whereupon Southard repeated the order to Wengert, and on Wengert's failure to comply they engaged in a tussle, falling to the floor. One or more shots were fired by Southard during or about the time of the tussle, Southard claiming that they were accidental and that none of them hit Wengert.

When Mahoney discovered the shooting in the front of the restaurant he came rapidly forward, and Wengert, who was lying on the floor, grabbed his leg and clung to him, and Mahoney fired one

or more shots at Wengert. Thereupon both Mahoney and Southard fled, but, after some weeks, were captured. Wengert died within a few minutes after the shooting, and the coroner who held an autopsy testified that five bullets had entered his body.

While Southard denies that he was acting in concert with Mahoney, and denies that he knew that any robbery was contemplated, the overwhelming weight of the evidence shows that they were associated together with a common purpose to commit a robbery, and that the shooting of Wengert was the natural and probable result of the attempt to rob. In view of the admissions on the witness stand by Southard that he had been convicted of various offenses, and was in fact a habitual criminal, the jury may well have failed to give credence to his testimony. While a robbery was not actually committed, it is perfectly clear that it would have been but for the resistance of Wengert.

It is urged that there is no evidence tending to show an attempt to rob Wengert, but, in view of the evidence, the jury would certainly be justified in finding Southard and Mahoney were attempting to rob those present in the restaurant. The evidence was amply sufficient to show beyond a reasonable doubt that Southard was guilty of the offense charged.

We find no error in the admission of evidence, in the charge of the court, or in the refusal to charge.

The only important question in this case relates to the sufficiency of the indictment. It was drawn

in what is called the short form, and reads as follows:

"State of Ohio, Lucas County, ss.:

"Of the term of September in the year of our Lord one thousand nine hundred and twenty-five.

"The jurors of the grand jury of the state of Ohio, within and for the body of the county aforesaid, on their oaths, in the name and by the authority of the state of Ohio, do find and present that James Harding Southard, late of the county aforesaid, on the 8th day of October, in the year of our Lord one thousand, nine hundred and twenty-five, at the county of Lucas aforesaid, while attempting to perpetrate a robbery in and upon one Fred Wengert, then and there being, did unlawfully and purposely kill and murder the said Fred Wengert by shooting him, the said Fred Wengert, with a pistol, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Ohio."

It is strenuously insisted that this indictment is fatally defective in failing to set out the facts constituting attempting to perpetrate a robbery, and it is urged that the indictment in that respect only charges a conclusion. This question has received the most careful consideration of the court. We know of no reported case in Ohio which has directly decided the question, although there are dicta to the effect that an indictment in such case should charge in full the facts constituting the felony. In the case of *Blair* v. *State,* 5 C. C., 496, 3 C. D., 242, it is stated, in the course of the opinion, that in order to charge murder in the first degree, committed while the accused is

attempting to perpetrate a robbery, the indictment must allege facts sufficient to show the attempt to commit the robbery, and that it would not be sufficient to set out that the accused was "attempting to perpetrate a robbery." The indictment in the case then under consideration by the court charged in detail the facts showing the robbery, and the sufficiency of an indictment in the form adopted in the present case was in no wise involved, so what was said was entirely *obiter,* and the same is true of the language of the court in *Murray* v. *State,* 23 C. C. (N. S.), 508, 34 C. D., 340. The cases cited rely on *Lamberton* v. *State,* 11 Ohio, 282, but that case hardly goes to the extent claimed.

It cannot be questioned that if the indictment had been drawn with the detail and elaboration formerly practiced, charging the killing of Wengert to have been with deliberate and premeditated malice, it would have been good, and under such an indictment the prosecutor could have introduced in evidence the facts showing that the killing was in the attempt to perpetrate a robbery, although such attempt was in no wise mentioned in the indictment. In this respect the present indictment gives the accused more information as to the nature of the offense with which he is charged than would have been afforded by one more elaborate.

The indictment was not assailed by motion or demurrer, and we are unable to see how the defendant was in any manner prejudiced by the failure to set out in detail the facts constituting robbery. The constant tendency at the present day is to get away from the early technicalities attending the administration of the criminal law. We are

entirely in accord with the language of Marshall, C. J., speaking for the court in *Long* v. *State,* 109 Ohio St., 77, 141 N. E., 691, in which he states that the courts are slowly but surely eliminating many of the senseless technicalities which have so long prevailed in the administration of the criminal law. See, also, *Lynch* v. *State,* 5 Ohio App., 16. It was said in *McHugh* v. *State,* 42 Ohio St., 154, that the judgment would not be reversed merely because the record contained error, but that the error, to be ground of reversal, must be prejudicial to the rights of the party complaining. We call attention to 13 Ruling Case Law, p. 896, where it is stated that under statutes enacted to abrogate or relax the technical rule of criminal pleading, enforced and adhered to under the common law, under the great weight of modern authority it is not necessary to aver more in the indictment than is sufficient to show jurisdiction and advise the defendant of the nature of the accusation with such certainty as to enable him to plead a conviction or acquittal thereunder in bar of another prosecution.

Section 13581, General Code, which has sometimes been called a curative statute, specifies various defects in an indictment which are not fatal, and then provides that the indictment shall not be held invalid ''for other defects or imperfections which do not tend to prejudice the substantial rights of the defendant upon the merits.''

We hold that under the modern methods of criminal procedure the indictment is valid and not subject to the criticisms urged against it, and that if it were defective in the respect claimed the defect would not be fatal within the purview of the statute referred to.

Finding no prejudicial error, the judgment will be affirmed.

*Judgment affirmed.*

WILLIAMS and YOUNG, JJ., concur.