Wayne STEWART, Petitioner-Appellant,

v.

Thomas ISRAEL, Respondent-Appellee.

No. 83–2930.

United States Court of Appeals, Seventh Circuit.

Argued June 4, 1984.

Decided July 16, 1984.

Jack E. Schairer, Asst. Public Defender, Madison, Wis., for petitioner-appellant.

Stephen W. Kleinmaier, Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., for respondent-appellee.

10. *See Stelloh v. Liban,* 21 Wis.2d 119, 124 N.W.2d 101 at 102–04 (1963); *Brownsell v. Klawitter,* 102 Wis.2d 108, 306 N.W.2d 41, 43 (Wis.1981).

Before BAUER and ESCHBACH, Circuit Judges, and EDWARDS, Circuit Judge.*

PER CURIAM.

This is an appeal from a judgment denying Appellant Stewart's petition for a writ of habeas corpus, entered in the United States District Court for the Eastern District of Wisconsin. The District Court's jurisdiction was founded on 28 U.S.C. § 2254. Appellant Stewart had been convicted and sentenced in the Oneida County Circuit Court in the State of Wisconsin on a charge of arson. The arson charge in this case originated in the following facts, quoted from Appellant Stewart's brief:

On September 8, 1979, Rhinelander police officer Thomas Gleasen received a call to remove a patron from Gilley's bar. Mr. Stewart's speech was described as slow, but understandable. He could stand under his own power. Mr. Stewart appeared intoxicated, but no more so than other bar patrons that the police were called to remove. The petitioner was arrested for disorderly conduct. Officer Gleasen took Mr. Stewart to the Oneida County Sheriff's Office where he was booked. During the booking process the petitioner was uncooperative. At one point he took his shirt off and threw it on the desk. Officer Terry Klabunde, who helped book Stewart, said his speech was somewhat impaired. Stewart was not responsive to questions by the booking officer. Klabunde, a breathalyzer operator, was of the opinion that if Stewart had taken a breath test, he would have failed but not by too much. When Klabunde put Stewart in a cell, he used abusive language and spit in the officer's face. Officer Fred Kunzelman observed the defendant cuss out the deputy. It was apparent that Mr. Stewart had been drinking. Inmate Ronald Simnick observed Mr. Stewart as being in a belligerent mood when brought into the jail. He was not staggering but was not walking normally. Inmate David Joy helped Mr. Stewart to his cell. He said Mr. Stewart was drunk.

After being placed in a cell, Mr. Stewart continued to swear at the deputies. Inmate Simnick said Mr. Stewart wanted to start a fire to get the guards in so everyone could get out.

Inmate David Joy saw Mr. Stewart light his pillowcase on fire and hang it out the hole in the cell door. He waved the pillowcase around and questioned why everyone else was not doing it.

Joy then saw Mr. Stewart had his sheet hanging out the door in flames and ignited his mattress. Mr. Stewart was trying to talk others into doing it. David Joy then started yelling about the fire.

Officer Kunzelman heard Mr. Stewart say "Let's start a fire and burn the place down." He saw the sheet and pillowcase on fire. Stewart then pushed his mattress into the hole in the cell door and it started to burn. Mr. Stewart was swearing things like "I'm going to burn the place down and teach those S.O.B.'s."

After the fire started, the jail had to be evacuated. Extensive property damage was done. Stewart had to be dragged from his cell by officers. Officer Robert Conquest testified Stewart did not want to leave his cell.

Appellant presented to a state appellate court in Wisconsin his contention that his conviction was federally unconstitutional because the charge given on the subject of arson in his case by the state court trial judge was such as to impose the burden of proof or at least the burden of persuasion on him. It is Appellant's contention that the charge violated the due process clause of the federal Constitution.

Appellant's contention before the District Court and now before us in relation to the charge was originally presented to the Wisconsin Court of Appeals for District Three, which court decided adversely to Stewart's contention in the following paragraphs of its unpublished opinion:

---

* The Honorable George Edwards, Circuit Judge of the United States Court of Appeals, Sixth Circuit, is sitting by designation.

Stewart's defense relied on evidence of his intoxication to show his inability to form intent to commit arson. The court instructed the jury as follows:

Now, the defense of intoxication is an issue in this case, members of the jury, and the law provides that an intoxicated condition is a defense if such condition negatives the existence of a state of mind essential to the crime. Ordinarily, intoxication will not excuse a person from responsibility for his criminal acts. However, where a certain state of mind or intent is an essential element of the crime, an accused is not guilty if at the time of the commission of the alleged criminal act he was so intoxicated that he was unable to form the essential intent or to have the essential mental state.

The intoxicated condition to which the law refers is that degree of drunkenness which makes a person incapable of forming intent to perform an act or commit a crime. To be relieved from responsibility for criminal acts it is not enough for a defendant to establish that he was under the influence of intoxicating beverages. It must be established that the defendant was utterly incapable of forming the intent requisite to the commission of the crime charged.

In this case, as it pertains to the offense of Arson, the defendant is charged with Arson in which one of the essential elements is that of intent to damage a building by means of fire and requires proof that the defendant knew that it was the building of another and knew that he did not have the consent of the owner to damage the building. If the defendant because of his condition was incapable of forming and therefore did not form the intent to damage a building by means of fire or if the defendant because of his condition was not capable of knowing and therefore did not know that it was the building of another, or if the defendant because of his condition was not capable and therefore did not know that he

did not have the consent of the owner to damage the building, then you must find him not guilty of Arson as charged.

\*    \*    \*    \*    \*    \*

Instructions must be considered as a whole. *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *State v. Lenarchick,* 74 Wis.2d 425, 455, 247 N.W.2d 80, 96 (1976). Instructions are to be evaluated with the understanding that jurors are expected to listen to all they are told by the judge and that they will not isolate a particular portion of the instruction and ascribe to it more importance than the rest. *McInerney v. Berman,* 621 F.2d 20, 24 (1st Cir.1980).

The Wisconsin Court of Appeals then concluded:

Considered in their entirety, the instructions given counterbalanced any arguably impermissible jury interpretation of the intoxication instruction. Prior to giving the challenged instruction, the court instructed the jury on the elements of arson and the elements of a lesser crime, criminal damage to property, sec. 943.01, Stats. The instructions informed the jury that intent was an element of each crime. The court specifically stated that the state must prove each element of the charge including the element of intent. After giving the intoxication instruction, the court instructed the jury that "[t]he defendant is not required to prove his innocence .... The burden of proving the defendant guilty ... is on the State." Read together, these instructions accurately stated the law.

The specific language relied upon by appellant before this Court as a federal constitutional violation is as follows:

The intoxicated condition to which the law refers is that degree of drunkenness which makes a person incapable of forming intent to perform an act or commit a crime. To be relieved from responsibility for criminal acts it is not enough for a defendant to establish that he was under

the influence of intoxicating beverages. It must be established that the defendant was utterly incapable of forming the intent requisite to the commission of the crime charged.

If this instruction stood alone, it would present a more substantial issue. This was, however, a lengthy charge and generally a fair one. Immediately before the charge recited above, the trial judge had charged:

Arson is defined in section 943.02 of the criminal code of Wisconsin, as committed by one who by means of fire intentionally damages any building of another without his consent.

Before the defendant may be found guilty of Arson under this statute the State must prove by evidence which satisfies you beyond a reasonable doubt that there were present the following five elements of this offense:

First, that the defendant damaged a building by means of fire;

Second, that the defendant did so intentionally;

Third, that it was the building of another;

Fourth that the defendant damaged such a building without the owner's consent;

And Fifth, that the defendant knew it was the building of another and knew that he did not have consent of the owner.

Immediately following the charge to which Appellant objects, the trial judge also said the following:

The law presumes every person charged with a commission of an offense to be innocent. This presumption attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The defendant is not required to prove his innocence.

The burden of proving the defendant guilty of every element of the crime charged or the other crime submitted for your consideration is on the State. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty.

If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and find him not guilty.

The term "reasonable doubt" means a doubt based upon reason and common sense. It is a doubt for which a reason can be given, arising from a fair and rationale consideration of the evidence, or want of evidence. It means such a doubt as would cause a man of ordinary prudence to pause or hesitate when called upon to act in the most important affairs of life.

It is hornbook law that a jury charge must be read as a whole. *Cupp v. Naughton,* 414 U.S. 141, 146–7, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

Our review of the total charge convinces us that this jury was amply informed—both before and after the questioned sentence—that the state had the burden of proof beyond reasonable doubt on all issues. Under these circumstances, we cannot find that the disputed charge represented a violation of the due process clause of the United States Constitution so as to warrant habeas corpus relief under 28 U.S.C. § 2254. See *Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982). *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). *See generally Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

The judgment of the District Court is affirmed.