Lewis H. MANN, Petitioner,

v.

Frank GRAY, Superintendent, Respondent.

No. C84–3651–Y.

United States District Court, N.D. Ohio, E.D.

Aug. 26, 1985.

On Motion to Alter and Amend Sept. 18, 1985.

---

Jill E. Stone, Asst. Public Defenders Comm., Columbus, Ohio, for petitioner.

Stuart A. Cole, Asst. Atty. Gen., Columbus, Ohio, for respondent.

## ORDER

BATTISTI, Chief Judge.

Petitioner was convicted of aggravated burglary in violation of Ohio Revised Code § 2911.11(A)(3). His conviction was affirmed on appeal. On December 5, 1984, petitioner filed for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging (1) denial of his Sixth Amendment right to confrontation for limitation of his cross-examination; (2) denial of his Fifth Amendment right to due process for improperly placing the burden of proof upon him and;

(3) denial of due process for the trial court's failure to instruct the jury on a lesser included offense and; (4) denial of his Fifth Amendment right against self-incrimination through the use of a coerced confession.

On April 23, 1985, Magistrate Jack Streepy filed his Report and Recommended Decision [hereinafter referred to as "Report"] in which he found no constitutional violations as alleged by petitioner; the Magistrate recommended that the petition for writ of habeas corpus be denied. Petitioner filed objections on May 8, 1984, addressing only the confrontation and due process claims; the petitioner did not object to the Magistrate's finding that there was insufficient basis for the coerced confession claim. The Court will therefore examine the confrontation and due process claims addressed by the Magistrate and objected to by petitioner.

## I.

### SIXTH AMENDMENT RIGHT TO CONFRONTATION/CROSS–EXAMINATION

At petitioner's trial, the prosecution called Jim Miller, who was at that time a 16 year old living in a group home run by the Ohio Youth Commission. Miller was in custody for his participation in the crime for which petitioner was being tried. When the defense sought to cross-examine Miller on his juvenile record, the trial court ruled that Miller could be cross-examined on "anything that he testified to here previously" or if "there were any promises made to him by the Prosecutor, the Judge, or anybody about the fact he is testifying here." Trial transcript at 65. [hereinafter referred to as "Tr."] The trial court specifically stated "there is no reason to allow cross-examination on a prior juvenile record ..." Tr. at 61, and distinguished the instant case from *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

At trial, on his state court appeal, and in the instant objections to the Magistrate's Report, petitioner relies on *Davis* and states that because he was denied the right

to inquire into Miller's juvenile record, his right to confrontation was denied. Petitioner's theory was that since Miller was subject to criminal prosecution under Ohio Revised Code § 2151.26, he was biased in that "it was in his best interests to minimize his culpability and tailor his testimony to the state's version of the case." Petitioner's Objections at 4 [hereinafter referred to as "Objections"]. The defense wanted to develop bias as a "basis for an inference of undue pressure because of [Miller's] vulnerable status as a probationer as well as [Miller's] possible concern that he might be [tried as an adult]." Objections at 4–5.

The Magistrate distinguished *Davis* from the instant case by noting that in *Davis* the juvenile delinquent's current probation status was completely foreclosed as an area for cross-examination whereas here petitioner was permitted to cross-examine Miller on his current custody status. Report at 2. The Magistrate found that foreclosing questioning of a witness on a prior finding of delinquency (for which he was neither in jail nor on probation) for the sole purpose of showing untruthfulness was not an unconstitutional limitation. Report at 3.

The Sixth Circuit has most recently discussed the right to cross examination in *United States v. Touchstone,* 726 F.2d 1116 (6th Cir.1984). In that case, the district court limited the cross-examination of a government witness who had been a participant in the defendant's criminal activity. The district court denied cross-examination into the witness' two prior homicides which were the basis of agreement the witness had made with state authorities; the defense sought to show the bias of the witness. The Sixth Circuit affirmed the trial court's limitation as not violating defendant's right to confrontation. The test enunciated was where a trial court has limited but not totally precluded cross-examination as to motive, "the issue is whether the jury was otherwise in possession of sufficient information concerning formative events to make a 'discriminating ap-

praisal' of a witness' motives and bias [citations omitted]." *Id.* at 1123.

In the instant case, the Court did not exclude information as to the witness' status or residence as the district court did in *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). Hence, the questioning as to witness Miller's status could have suggested to the jury that the witness' testimony was given with some expectation of leniency or fear of prosecution.

It is important that this Court analyze *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), because of its centrality to Sixth Amendment jurisprudence regarding the right to cross-examination and petitioner's reliance on it in the instant case. In *Davis*, the defendant was charged with grand larceny and burglary. The prosecution called Richard Green who had seen the defendant near the burglary site and who picked the defendant out of a police lineup. The prosecution moved for a protective order to prevent any reference to Green's juvenile record in cross-examination. Green was on probation by order of a juvenile court for burglary. He was 16 years of age at the time he saw defendant but had turned 17 prior to trial.

In opposing the protective order, petitioner's counsel made it clear that he would not introduce Green's juvenile adjudication as a general impeachment of Green's character as a truthful person but, rather, to show specifically that at the same time Green was assisting the police in identifying petitioner he was on probation for burglary. From this petitioner would seek to show—or at least argue—that Green acted out of fear or concern of possible jeopardy to his probation. Not only might Green have made a hasty and faulty identification of petitioner to shift suspicion away from himself as one who robbed the [bar], but Green might have been subject to undue pressure from the police and made his identifications under fear of possible probation revocation. Green's record would be revealed only as necessary to probe Green for bias and prejudice and not generally to call Green's good character into question."

*Id.* at 311, 94 S.Ct. at 1108.

The trial court, citing an Alaska statute making the juvenile delinquency record inadmissible, granted the protective order and the Alaska Supreme Court affirmed on the ground that defense counsel had been given adequate opportunity to question the witness concerning the possibility of bias or motive. *Id.* at 314–15, 94 S.Ct. at 1109.

The Supreme Court reversed the conviction on the ground that defendant Davis was not able to adequately and properly develop the bias issue for the jury.

While counsel was permitted to ask Green *whether* he was biased, counsel was unable to make a record from which to argue *why* Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness or, as the prosecutor's objection put it, a "rehash" of prior cross-examination. On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.

■ The thrust of *Davis* is that the defendant should have been permitted to establish that the witness was on probation. There is no indication that cross-examination about prior offenses is required. In the instant case since there had been direct testimony that witness Miller was in the custody of the Ohio Youth Commission, Tr. at 40, and that he had participated in the burglary with defendant Mann, Tr. at 43, the defense had sufficient basis to cross-examine Miller on his current status and concern for leniency in subsequent prosecutions. Furthermore, the trial court permit-

ted cross-examination on the circumstances of witness Miller's appearance and any deals he may have struck. Hence, unlike *Davis* where no testimony was permitted on the witness' current status, in the instant case such questioning was permitted. Hence, under *Davis* and the Sixth circuit's *Touchstone* test, this Court concludes the jury had sufficient information before it, namely Miller's custody status, his age and the possibility of an agreement with the prosecution, to make a "discriminating appraisal" of his motives and bias. The Magistrate was correct in finding that the defense does not have a constitutional right to inquire into prior findings of juvenile delinquency. Accordingly, there is no violation of the Sixth Amendment right to confrontation.

## II.

## DUE PROCESS—BURDEN OF PROOF

Petitioner contends his right to due process of law was violated when the trial judge instructed the jury that the defendant/petitioner had the burden of proving by a preponderance of the evidence that he was intoxicated to the extent that he could not have formed the requisite criminal intent. The Magistrate found that since intoxication is an affirmative defense, "due process is not violated by placing the burden of proof on the defendant to prove certain affirmative defenses." Report at 3. The petitioner objects on the ground that intoxication is not an affirmative defense but rather testimony which negates an element (i.e. specific intent) of the crime; hence, it violates due process to impose the "burden of proof [upon the defendant] to negate an element of the crime for which he was charged." Objections at 7.

It is well-established that the state must bear the burden of proving beyond a reasonable doubt every element of the offense charged. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Since it is not unconstitutional to shift the burden of proof to the defendant on a matter which does not negate an element of the crime, such as an affirmative defense, *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), this Court's first inquiry must be whether under Ohio law intoxication is an affirmative defense.[1]

At this point, it is worth identifying the elements of the crime for which petitioner was convicted. Ohio Revised Code § 2911.-11(A)(3) defines "Aggravated Burglary" thus:

No person by force, stealth, or deception shall trespass in an occupied structure ... with purpose to commit therein any theft offense ... when any of the following apply: ... the occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present.

The three elements of the offense, identified by the trial judge, were: (1) the defendant or a person or persons with whom he had a common purpose, by force trespassed in an occupied structure; (2) that he did so with purpose to obtain property owned by another without her consent and to deprive her of that property; and (3) at the time, the occupied structure involved was the permanent or temporary habitation of another in which at the time any person was present or likely to be present. Hence, the three elements are:

(1) trespass with force;

(2) intent to commit a theft; and

(3) an occupied structure which is the habitation of another.

Hence, petitioner contends that intoxication negates element No. 2 of the crime.

Petitioner is incorrect in stating at page 11 of his Objections that "intoxication is not an affirmative defense in Ohio"; sever-

---

1. The burden of proof, by a preponderance of the evidence, for an affirmative defense is upon the accused under Ohio Revised Code § 2901.-05(A) as amended in 1978. Under Ohio Revised Code § 2901.05(C), an "affirmative defense" is either (1) a defense expressly designated as af-firmative by statute, or (2) a defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence.

al cases have held to the contrary. In *State v. Poole,* 33 Ohio St.2d 18, 294 N.E.2d 888, 889 (1973), the Ohio Supreme Court stated:

> This Court has consistently recognized that there are certain "justification[s] for admitted conduct" allowed to a defendant in a criminal case, provable for the most part under the plea of not guilty, which are referred to as "affirmative defenses." As characterized by one authority, they represent not a mere denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged, but, rather, they represent a substantive or independent matter "which the defendant claims exempts him from liability even if it is conceded that the facts claimed by the prosecution are true." Among those defenses in Ohio, are self-defense, duress, insanity and *intoxication.* (emphasis added).

*Id.,* 294 N.E.2d at 889 (quoted in *Thomas v. Arn,* 704 F.2d 865, 877 (6th Cir.1983); *accord, State v. Jones,* 423 N.E.2d 447, 67 Ohio St.2d 244 (1981); *State v. Humphries,* 364 N.E.2d 1354, 51 Ohio St.2d 95 (1977); *State v. Robinson,* 351 N.E.2d 88, 47 Ohio St.2d 103, 1 O.O.3d 61 (1976).

Placing the burden of proving intoxication on the defendant has been held not to violate due process. *Stewart v. Israel,* 738 F.2d 889, 892 (7th Cir.1984) (arson conviction); *Hobgood v. Housewright,* 698 F.2d 962, 963 (8th Cir.1983) (burglary, kidnapping and first degree murder); *U.S. ex rel Goddard v. Vaughn,* 614 F.2d 929, 936 (3rd Cir.1980) (first degree murder).[2] In *Gilcrist v. Kincheloe,* 589 F.Supp. 291, 294 (E.D.Wash.1984), on a conviction for escaping from prison, the Court stated, "Like insanity, involuntary intoxication diminishes the culpability of a crime. The defendant is said to be excused from the criminality of the act because intoxication affects the ability to distinguish between right and wrong. For this reason, courts generally characterize involuntary intoxi-

cation as a temporary degree of insanity." *Id.* at 294. Insanity has traditionally been an affirmative defense.

In Ohio, voluntary as well as involuntary intoxication is ordinarily no defense in a criminal proceeding. *Tome v. Berea Pewter Mug Co.,* 446 N.E.2d 848, 852, 4 Ohio App.3d 98 (Cuyahoga Ct.App.1982). Since voluntary drunkeness is not a justification or excuse for the commission of a crime in Ohio, a drunken person has, in ordinary cases, enough sense to form a purpose. However, where a specific intent or knowledge is essential, intoxication may be shown for the purpose of lowering the degree of the offense. *See* 27 Ohio Jur.3d Criminal Law §§ 1135, 1144 (1981). While intoxication is not a defense to a crime, it is submitted to the jury for crimes in which specific intent or guilty knowledge is charged. In a prosecution for murder, the burden for establishing such degree of intoxication as would render the defendant incapable of forming an intent to kill was on defendant. *Long v. State,* 109 Ohio St. 77, 141 N.E. 691 (1923). Intoxication has also been interpreted as an affirmative defense under the statute relating to the burden of going forward with evidence as to such defense. *State v. Humphries, supra.*

█ Having established that intoxication is an affirmative defense under Ohio's law, the second question to be addressed is whether even though intoxication is nominally an affirmative defense, "nonetheless, because of its nature, [it] negate[s] an element of the offense." *Takacs v. Engle,* 768 F.2d 122, 125 (6th Cir.1985). It is only when the State "requires a defendant to prove the existence of a defense which negates an element of the offense" that Constitutional infirmity arises. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Patterson, supra,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Thomas v. Arn,* 704 F.2d 865, 874 (6th Cir.1983).

Mann argues that intoxication "*negates* the element of mens rea in specific intent crimes." Objections at 11. Petitioner does not cite any Ohio cases to support his prop-

---

**2.** *Vaughn* also notes that "[h]istorically a majority of the states have placed the burden of prov-

ing the defense of voluntary intoxication on the defendant in a criminal case." *Id.* at 934.

osition but lists various Sixth Circuit opinions as well as those from jurisdictions outside Ohio showing that insanity, self-defense, duress, etc. have all been found to negate elements of crimes. In the instant case, the specific intent required as an element of the crime is that the defendant had a "purpose to commit a theft offense."

Ohio Revised Code § 2901.22 entitled "Culpable Mental States", indicates that: (A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

Intoxication does not by itself negate the "purposeful" mens rea. Indeed, intoxication is not a defense to the commission of a crime unless a defendant is able to show that the degree of intoxication was so great as to negate his ability to form an intent to commit the crime. *State v. Norman*, 7 Ohio App.3d 17, 7 O.B.R. 19, 453 N.E.2d 1257, 1260 (Delaware County Ct. Appeals 1982). Hence, it is appropriate to place the burden of proof on the defendant to show that his consumption of alcohol was so great that he could not form a specific intent or even have a desire to engage in conduct which results in theft.

■ Finally, as the Magistrate correctly noted, the jury instructions must be considered as a whole. *Cupp v. Naughton*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). It appears from an examination of the record that the trial court clearly indicated the elements of the offense and emphasized that the State still had to prove all the elements of the defense beyond a reasonable doubt. Therefore, the Court concludes imposing the burden of proving the affirmative defense of intoxication did not violate petitioner's due process right.

### III.

### DUE PROCESS—LESSER INCLUDED OFFENSE

■ Petitioner argues that the trial court's failure to instruct the jury on the charge of criminal trespass, a lesser included offense of aggravated burglary, violates his due process right. As the Magistrate notes at page 5 of his Report, a trial court is not obliged to instruct a jury on a lesser included offense. "Due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction." *Hopper v. Evans*, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). The Sixth Circuit has made this standard applicable to non-capital cases. *Ferrazza v. Mintzes*, 735 F.2d 967 (6th Cir.1984).

■ It is clear from the trial court record that counsel for defendant requested the Court to instruct the jury on the lesser included offense of "criminal trespass" and that the trial judge denied the request. Tr. at 21. Since counsel requested the instruction, this Court may consider in the context of habeas corpus whether the denial to instruct rose to the level of a constitutional violation *Cf. Pilon v. Bordenkircher*, 593 F.2d 264, 268 (6th Cir.1979) ("As a general rule, the failure to give an unrequested lesser included offense instruction is not cognizable on habeas corpus.")

The Magistrate was correct in noting that failure to give a lesser included offense "does not rise to the level of constitutional error when the failure was correct as a matter of state law." *Id.* at 267. Petitioner's conviction has been affirmed by the Ohio Supreme Court. Hence, this Court's inquiry is whether the failure to give the instruction violated petitioner's due process rights. The standard must therefore be "whether [there was] evidence which would permit the jury to rationally find the defendant guilty of the lesser included offense and to acquit him on the greater offense before he is entitled to a lesser included offense instruction." *Id.* at 267 n. 4. (citing *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973).)

■ Criminal trespass is indeed a lesser included offense of aggravated burglary.

*State v. Scruggs*, 18 O.O.3d 154, 155 (1980). As defined in Ohio Revised Code § 2911.21 criminal trespass occurs when a person "without privilege to do so ... knowingly enter[s] or remain[s] on the land or premises of another ..." Hence, the State to obtain a conviction on the grounds of aggravated burglary the State had to prove not only that petitioner was "knowingly in the house without permission ... [but that] he did so with the purpose to commit a theft offense." Report at 7.

■ The Magistrate's review of the evidence leads this Court to conclude that there was sufficient evidence to find petitioner had the requisite criminal purpose. Furthermore, using the standard of *O'Guin v. Foltz*, 715 F.2d 397, 399 (6th Cir.1983), the trial court's failure to instruct on the lesser included offense did not deny defendant a fair trial. Petitioner's argument that evidence of his intoxication would have negated the specific intent of aggravated burglary has already been discussed in part II *supra* and must once again be rejected here. Hence, the trial court's refusal to instruct on the lesser included offense did not rise to the level of violating defendant's Fifth Amendment right to due process.

### IV.

### COERCED CONFESSION

The petitioner has not objected to Part IV of the Magistrate's Report. In that section, the Magistrate found that Petitioner's claim that his conviction was obtained through use of a coerced confession had not been sufficiently documented either in the "record" or by reason and authority. There being no objection to the Magistrate's conclusion, this Court dismisses petitioner's coerced confession claim as being without basis.

### V.

After receiving the Magistrate's Report and Petitioner's Objections, this Court (1) finds no violation of petitioner's Sixth Amendment right to confrontation, (2) finds no violation of petitioner's Fifth Amendment right to due process either in the context of burden of proof or a lesser included offense jury instruction and (3) dismisses petitioner's claim of coerced confession. The Magistrate's Report and Recommended Decision is hereby adopted. Accordingly, the petition for writ of habeas corpus is denied.

IT IS SO ORDERED.

### ON MOTION TO ALTER AND AMEND

On August 26, 1985, this Court entered a memorandum opinion and order adopting the Magistrate's Report and Recommended Decision which denied petitioner's writ of habeas corpus. On September 6, 1985, petitioner moved to alter and amend this Court's August 26, 1985 judgment.

Petitioner's Motion to Alter and Amend asserts that this court erred in finding that: (1) intoxication is an affirmative defense in Ohio and (2) that consequently the State may place the burden of proof as to intoxication on defendant/petitioner. Petitioner's Motion to Alter and Amend states, "unfortunately, the district court failed to recognize that *State v. Fox* (1981), 68 Ohio St.2d 53 [428 N.E.2d 410], not *State v. Poole* (1973), 33 Ohio St.2d [18, 294 N.E.2d 888] controls this case." Petitioner's Motion to Alter & Amend at 1–2. Since petitioner asserts *Fox* as the only case necessitating correction of this Court's judgment, that case will be examined in detail.

In *State v. Fox*, 68 Ohio St.2d 53, 428 N.E.2d 410 (1981), 3 defendants were each convicted of attempted murder of a police chief in violation of Ohio Revised Code §§ 2903.02 and 2923.02. At trial the defendants "denied shooting at the [victim police chief's] home." *Id.* at 54, 428 N.E.2d 410. They also claimed they were drinking. *Id.* The trial judge refused to instruct the jury to the effect that "[w]here a specific intent or knowledge is essential, intoxication may be shown for the purpose of eliminating such element of the offense, or for the purpose of lowering the degree of the offense." *Id.* at 54 n. 1, 428 N.E.2d 410. The Court of Appeals reversed the convictions because the trial judge had not instructed

the jury on the effect of intoxication on the specific intent necessary for attempted murder.

The Ohio Supreme Court reversed the Court of Appeals and sustained the convictions. Justice Clifford Brown wrote:

> The common law and statutory rule in American jurisprudence is that voluntary intoxication is not a defense to any crime. Long v. State (1923). 109 Ohio St. 77, 86 [141 N.E. 691]. An exception to the general rule has developed, where specific intent is a necessary element, that if the intoxication was such as to preclude the formation of such intent, the fact of intoxication may be shown to negative this element. [citation omitted]. In such a case, intoxication, although voluntary, may be considered in determining whether an act was done intentionally or with deliberation or premeditation. *State v. French* (1961), 171 Ohio St. 501, 502 [172 N.E.2d 613], cert. denied 366 U.S. 973 [81 S.Ct. 1941, 6 L.Ed.2d 1263].

*Id.* at 54–55, 428 N.E.2d 410.[1]

However, the *Fox* opinion did not discuss where the burden of proof lies. The specific issue the Court addressed was "[g]iven the admissibility of evidence of intoxication ... the issue is whether the trial court erred by refusing to go further and charge the jury on the possibility intoxication negated formation of the specific intent to attempt murder." *Id.* at 55, 428 N.E.2d 410. Citing the case of *Nichols v. State*, 8 Ohio St. 435 (1858), the Court in *Fox* refused to require such a jury instruction. The *Fox* court stated:

> '* * * [w]hen we admit evidence of intoxication to rebut ... a charge of deliberation and premeditation, ... we think we have gone far enough....'
>
> *      *      *      *      *      *
>
> Subsequent cases decided by this Court have recognized the appropriateness of a special jury charge on the effect of intoxication on formation of intent when that issue is properly raised by the evidence. (citation omitted). But this

Court has never found it necessary to promulgate a rule to regulate judges in this matter ... This matter is best left to the discretion of the experienced trial judge.

*Id.*, 68 Ohio St.2d at 56, 428 N.E.2d 410.

The *Fox* Court found, as did the trial judge, that there was not enough evidence to warrant the requested instruction.

The preceding discussion of *Fox* has been so lengthy in order to clearly show that that case does not address the issue of burdens of proof nor does it in any way deny this Court's finding that intoxication is an affirmative defense in Ohio. It simply stands for the proposition that evidence of voluntary intoxication *may be taken* in order to show that defendant was precluded from forming the necessary purpose.

In the instant case, the trial judge did permit the introduction of evidence regarding petitioner Mann's state of intoxication. However, *Fox* states that it was also in the trial judge's discretion whether or not he considered the evidence sufficient to merit instructing the jury on the effect of intoxication on specific intent.

In the instant case, the trial judge gave the following charge as to the effect of intoxication of the purpose element of the crime of aggravated burglary.

> The defendant claims that he was intoxicated and under the influence of drugs and, therefore, was not able to form the purpose to commit a theft offense.
>
> Intoxication or being under the influence of drugs exists when a person consumes a quantity of intoxicating beverage containing alcohol or uses drugs sufficient to adversely affect his mental process and to deprive him of that clearness of intellect that he would otherwise have possessed.
>
> Intoxication and/or being under the influence of drugs is not an excuse for an offense. However, such evidence is admissible for the purpose of showing that

---

**1.** Petitioner did cite the first two lines of this quoted passage from *Fox* at page 6 of his Objections to the Magistrate's Report and Recommended Decision. However, it was quoted only for the purpose of "stat[ing] the general rule of intoxication" in Ohio.

the defendant was so intoxicated or under the influence of drugs that he was incapable of forming the purpose or having the knowledge to commit the offense of "Aggravated Burglary".

On this issue the burden of proof is upon the defendant to establish by a preponderance or the greater weight of the evidence that at the time in question he was incapable of forming a purpose or having the knowledge to commit the offense.

Trial Transcript, Ct. of Common Pleas, Ashtabula County at 306.

The trial court continued:

If the defendant fails to establish the defense of being under the influence of alcohol and drugs, the State still must prove to you beyond a reasonable doubt all of the elements of the crime charged.

*Id.* at 307.

As this Court emphasized in its August 26, 1985 opinion and order, the Sixth Circuit and other courts have held that placing the burden of proving intoxication on the defendant does not violate due process. Once again, this Court believes that viewing the jury charge as a whole under the test of *Cupp v. Naughton,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) leads to the conclusion that the State was still required to prove all the elements of the offense beyond a reasonable doubt. Hence, petitioner's due process rights were not violated by placing the burden of proof on the defendant as to the affirmative defense of intoxication. *State v. Fox* does not deny this Court's finding that there was no due process violation.

Accordingly, petitioner's Motion to Alter or Amend this Court's judgment of August 26, 1985 is denied; petition for writ of habeas corpus is denied.

IT IS SO ORDERED.